**Troy COOPER, Petitioner-Appellant,**

v.

**C. J. FITZHARRIS, Respondent-Appellee.**

No. 74-2998.

United States Court of Appeals,
Ninth Circuit.

Dec. 1, 1978.

James F. Hewitt, Federal Public Defender (argued), William M. Goodman, Asst. Federal Public Defender, on the brief, San Francisco, Cal., for petitioner-appellant.

Ann Jensen (argued), San Francisco, Cal., for respondent-appellee.

Before BROWNING, DUNIWAY, ELY, HUFSTEDLER, WRIGHT, TRASK, CHOY, GOODWIN, WALLACE, SNEED, KENNEDY, ANDERSON and HUG, Circuit Judges.

BROWNING, Circuit Judge:

Troy Cooper, a state prisoner convicted of burglary, assault, robbery, and rape, filed a petition under 28 U.S.C. § 2254 alleging he had not been afforded effective assistance of counsel at trial. The district court denied the petition and Cooper appealed. The appeal was heard in banc to consider the standard to be applied in determining whether counsel's performance met constitutional requirements, and to decide whether counsel's deficiencies must have prejudiced the defendant to require a new trial.[1]

We hold that the Sixth Amendment requires that persons accused of crime be afforded reasonably competent and effective representation. We also hold that where, as here, the claim of ineffective assistance is founded upon specific acts and omissions of defense counsel at trial, the accused must establish that counsel's errors prejudiced the defense. We conclude that the representation afforded appellant in this case satisfied the Sixth Amendment, and affirm.

I

The facts, briefly stated, are as follows. A black man wearing a blue sweater broke into the San Francisco home of Mrs. Eva Mae Stewart, entered her bedroom, and attacked her. Mrs. Stewart scratched her assailant on the face and neck. After the attack the assailant fled in the direction of the Jedediah Smith School a few blocks away.

An hour and a half later a black man wearing a blue sweater attacked Mrs. Luisa Younger as she walked across the Jedediah Smith schoolyard on her way to church, and raped and robbed her at knifepoint.

Appellant's fingerprints were found in the Stewart home. He was arrested when he visited his probation officer. There were scratches on appellant's face and neck, the result, he claimed, of an attack by a woman on Fillmore Street a few weeks earlier. Appellant denied having been to the Stewart home. He admitted having crossed the Jedediah Smith schoolyard in the past, but denied having been there on the day of the attack.

Appellant consented to a search of his home. The search revealed a pair of shoes allegedly worn by appellant on the day of the attacks and a knife allegedly used in the Younger attack. A search of appellant's person incident to booking revealed a laundry ticket which led in turn to the retrieval of a blue sweater with discolorations, possibly bloodstains. A lineup was conducted. Mrs. Stewart and Mrs. Younger identified appellant as their assailant.

At trial, Mrs. Stewart identified appellant's picture from a photograph of the pre-indictment lineup. Mrs. Stewart's daughter identified appellant as the man who had attacked her mother. Mrs. Younger identified appellant's picture from a photograph of the lineup and pointed him out at trial. Her identification remained positive after vigorous cross-examination. Fingerprints found in the Stewart home were introduced and identified as appellant's. The prosecution also introduced the blue sweater, the knife, the shoes, and the statements made by appellant to police following his arrest.

Appellant took the stand on his own behalf. He testified he climbed through the window of the Stewart home to get out of

---

1. Varying formulations of the standard in opinions of this court are identified in *de Kaplany v. Enomoto,* 540 F.2d 975 (9th Cir. 1976) (en banc). As to whether prejudice must appear and whether the harmless error rule applies, *compare Sanders v. Craven,* 488 F.2d 478, 479– 80 (9th Cir. 1973) *with United States v. Williams,* 455 F.2d 361, 365–66 (9th Cir. 1972); *United States v. Shea,* 436 F.2d 740, 743 (9th Cir. 1970), 445 F.2d 856 (9th Cir. 1971); *Hayman v. United States,* 205 F.2d 891, 894 (9th Cir. 1953).

the rain and Mrs. Stewart attacked him. He denied involvement in the Younger attack. The jury found appellant guilty; he was sentenced to two consecutive five-year to life terms. He did not appeal.

Seven years later appellant filed the present petition. The only claim relevant to this appeal is that he was not afforded effective assistance of counsel at trial. To support this claim, appellant cited counsel's failure to object to admission of the fruits of the warrantless searches of appellant's person and home, failure to move to suppress the statements made by appellant to police, failure to object to testimony regarding appellant's identification at the pre-indictment lineup, and failure to inform appellant of his right to appeal. Appellant also criticized his attorney's failure to stipulate to appellant's prior burglary conviction, pointing out that when put to its proof the state established not only that appellant was a convicted felon but also that his probation for the felony had been revoked.

The district court dismissed the petition after an evidentiary hearing on the ground that the challenged acts and omissions of counsel were either not prejudicial or did not reduce appellant's trial to a "farce and mockery of justice."

Appellant argues that he was not required to show that his trial was a "farce and mockery of justice" but only that he did not receive reasonably competent and effective assistance of counsel. We agree. Appellant argues that he discharged this burden, and that he is entitled to a new trial whether or not counsel's errors prejudiced the defense. We do not agree.[2]

## II

■ We join other courts of appeals in concluding that the "farce and mockery" standard has been outmoded by the gradual development of the law, and that reasonably competent and effective representation is a more apt and accurate description of the quality of legal assistance required under the Sixth Amendment.[3]

The "farce and mockery" test originated when the right to effective assistance of counsel was thought to rest on the general guarantee of the due process clause. The test faithfully reflected its origin: a conviction could be overturned only if the deficiencies in counsel's performance were so egregious as to shock the conscience of the reviewing court and thus offend due process.[4]

The Supreme Court's decision in *Gideon v. Wainwright*, 372 U.S. 335, 339, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), *overruling Betts v. Brady*, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), recognized that the source of the right was the specific Sixth Amendment guarantee of the right to assistance of counsel, made obligatory upon

---

2. The panel to which the case was initially assigned agreed. *See Cooper v. Fitzharris*, 551 F.2d 1162 (9th Cir. 1977).

3. The "farce and mockery" standard has been abandoned expressly or by clear implication by the Court of Appeals for the District of Columbia, *United States v. DeCoster*, 159 U.S.App.D.C. 326, 330-31, 487 F.2d 1197, 1201–02 (1973), *opinion after remand*, No. 72-1283 (D.C. Cir. October 19, 1976), *rehearing en banc granted*, No. 72-1293 (D.C.Cir. March 17, 1977); the Third Circuit, *Moore v. United States*, 432 F.2d 730, 736-37 (3d Cir. 1970) (en banc); the Fourth Circuit, *Marzullo v. State of Maryland*, 561 F.2d 540, 543-44 (4th Cir. 1977); the Fifth Circuit, *Herring v. Estelle*, 491 F.2d 125, 128 (5th Cir. 1974); the Sixth Circuit, *Beasley v.*

*United States*, 491 F.2d 687, 696 (6th Cir. 1974); the Seventh Circuit, *United States ex rel. Williams v. Twomey*, 510 F.2d 634, 641 (7th Cir. 1975); and the Eighth Circuit, *United States v. Easter*, 539 F.2d 663, 665-66 (8th Cir. 1976).

4. *See Diggs v. Welch*, 80 U.S.App.D.C. 5, 148 F.2d 667 (Arnold, J.), *cert. denied*, 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002 (1945). *See also Mitchell v. United States*, 104 U.S.App.D.C. 57, 259 F.2d 787 (1958); *Latimer v. Cranor*, 214 F.2d 926 (9th Cir. 1954); *United States ex rel. Feeley v. Ragen*, 166 F.2d 976, 980-81 (7th Cir. 1948); *Tompsett v. State of Ohio*, 146 F.2d 95 (6th Cir. 1944); *Andrews v. Robertson*, 145 F.2d 101 (5th Cir. 1944).

the states by the due process clause of the Fourteenth Amendment. A line of Supreme Court decisions, culminating in *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), undercut the notion that the command of the Sixth Amendment was satisfied merely by appointment of a reputable member of the bar and that counsel's performance after appointment need only meet due process standards.[5] It was established that persons accused of crime are entitled not merely to counsel's presence but to effective assistance of counsel, and that effective assistance means assistance "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson, supra,* 397 U.S. at 771, 90 S.Ct. at 1449.

Experience proved baseless the fear that unprincipled lawyers, indifferent to their professional obligations and reputations, would perform below minimum constitutional standards to render their clients' convictions vulnerable to collateral attack. The concern that courts would be overburdened with frivolous accusations of incompetent assistance was met by requiring specificity in pleading the inadequacies of counsel's performance and how they prejudiced the accused. As a description of the protection actually afforded the rights of the accused, the "farce and mockery" formulation became increasingly inaccurate. In practice, the interest in finality was made to yield whenever an accused person had been prejudiced by a lack of reasonably competent legal assistance. With growing frequency the constitutional standard was stated in these terms.

The shift was gradual. In this circuit, as in others, both forms of statement were used during the same period, often in the same opinion.[6] The two were said to be synonymous.[7] We believe the differences are of sufficient importance, however, to justify deliberate rejection of the "farce and mockery" verbiage in favor of a statement of the test in terms of reasonably effective and competent defense representation.

This rephrasing links the standard directly to the Sixth Amendment guarantee of effective assistance of counsel, as well as to the general requirement of due process. It focuses inquiry upon the subject matter of the constitutional guarantee—counsel's performance. It avoids the misleading implication that what occurred at the trial and appears on the face of the record is all that is relevant.

■ The restatement substitutes a significantly more objective reference for a peculiarly subjective one. Whether counsel's deficiencies converted a trial into a "farce and mockery" depends upon the subjective reaction of the particular judge. Whether counsel's acts and omissions were within the range of competence required of criminal attorneys also involves a measure of personal judgment, but the judgment is made with reference to a fact the court knows or

---

**5.** For cases supporting this outdated approach, see *Diggs v. Welch*, 80 U.S.App.D.C. 5, 148 F.2d 667 (passim), *cert. denied*, 325 U.S. 889, 65 S.Ct. 1576, 89 L.Ed. 2002 (1945); *Beasley v. United States*, 491 F.2d 687, 693–94 (6th Cir. 1974). Other theoretical bases of the farce and mockery standard have also been rejected by courts and commentators. *See, e. g.*, Bines, *Remedying Ineffective Representation*, 59 Va.L. Rev. 927, 929 n.10 (1973); Simpson, *Attorney Competency*, 54 Texas L.Rev. 1081, 1096–1100 (1976); Strazzella, *Ineffective Assistance of Counsel Claims: New Uses, New Problems*, 19 Ariz.L.Rev. 443 (1977); *Note, Ineffective Representation*, 13 Colum.J.L. & Soc.Prob. 1, 53–71 (1977); *Note, Effective Assistance of Counsel*, 10 Valpar.L.Rev. 509, 510 n.11 (1976).

**6.** *See de Kaplany v. Enomoto*, 540 F.2d 975, 987 (9th Cir. 1976) (en banc); *Kruchten v. Eyman*, 406 F.2d 304, 312 (9th Cir. 1969); *Brubaker v. Dickson*, 310 F.2d 30, 37, 39 (9th Cir. 1962). *See also Beasley v. United States*, 491 F.2d 687, 696 (6th Cir. 1974).

**7.** *Leano v. United States*, 457 F.2d 1208, 1209 (9th Cir. 1972); *United States v. Miramon*, 470 F.2d 1362, 1363 (9th Cir. 1972). *See United States v. Easter*, 539 F.2d 663, 666 (8th Cir. 1976); *Beasley v. United States*, 491 F.2d 687, 696 (6th Cir. 1974).

can determine by inquiry.[8] Similar standards are applied in other areas of the law and are familiar to the judges.

The reformulation more accurately describes the law as it has actually been applied, in this circuit and in others, for many years. It is consistent with, and perhaps required by, the Supreme Court's characterization of the substance of the constitutional right to assistance of counsel in such recent cases as *McMann v. Richardson, supra*, and *Tollett v. Henderson*, 411 U.S. 258, 268, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). To repeat the words of Justice White in *McMann*, persons accused of crime are "entitled to the effective assistance of . . counsel" acting "within the range of competence demanded of attorneys in criminal cases." 397 U.S. at 771, 90 S.Ct. at 1449.

Some courts have particularized elements of the minimal performance to be expected of counsel representing a defendant in a criminal proceeding.[9] Such a checklist would serve to enhance the objectivity of the general standard. Nonetheless, we believe it would be unwise to restrict the constitutional requirement to a list of essential elements applicable to all of the infinite variety of factual situations that arise. As Justice White concluded after stating the

general standard, "Beyond this we think the matter, for the most part, should be left to the good sense and discretion of the trial courts . . . ." 397 U.S. at 771, 90 S.Ct. at 1449.

The fact that counsel erred is not alone enough to establish a denial of the constitutional right. This follows from the nature of the right itself. The Constitution does not guarantee representation that is infallible. The accused "assumes the risk of ordinary error in either his or his attorney's assessment of the law and facts . . . [H]e is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel . . . ." *McMann v. Richardson, supra*, 397 U.S. at 774, 90 S.Ct. at 1450. "[E]rrors by trial counsel of the extent and kind common to all human efforts" do not establish a violation of the Sixth Amendment. *Rivera v. United States*, 318 F.2d 606, 608 (9th Cir. 1963). Defense counsel's errors or omissions must reflect a failure to exercise the skill, judgment, or diligence of a reasonably competent criminal defense attorney—they must be errors a reasonably competent attorney acting as a diligent conscientious advocate would not have made, for that is the constitutional standard.[10]

8.  See *Marzullo v. State of Maryland*, 561 F.2d 540, 544 (4th Cir. 1977).

9.  See, e. g., *Coles v. Peyton*, 389 F.2d 224, 226 (4th Cir. 1968); *United States v. DeCoster, supra* note 3, 159 U.S.App.D.C. at 332–33, 487 F.2d at 1203–04.

10.  See *Moore v. United States*, 432 F.2d 730, 736 (3rd Cir. 1970) (en banc); *United States v. DeCoster, supra* note 3, 159 U.S.App.D.C. at 331, 487 F.2d at 1202; *Herring v. Estelle*, 491 F.2d 125, 128 (5th Cir. 1974); *United States ex rel. Williams v. Twomey*, 510 F.2d 634, 641 (7th Cir. 1975); *United States v. Easter*, 539 F.2d 663, 666 (8th Cir. 1976).

In determining whether reasonably competent counsel would have acted as defense counsel did, counsel's ability to foresee that prejudice might arise as a result of his actions plays an important role. Relief has been denied where the prejudicial consequences of the challenged acts or omissions were not reasonably foreseeable at the time counsel acted or failed

to act. *Tollett v. Henderson*, 411 U.S. 258, 269, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973); *McMann v. Richardson*, 397 U.S. 759, 772–73, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1973); *United States v. Bradford*, 528 F.2d 899, 900 (9th Cir. 1975); *Hayward v. Stone*, 527 F.2d 256, 257 (9th Cir. 1975); *Kruchten v. Eyman*, 406 F.2d 304, 312–13 (9th Cir. 1969). Relief has been granted where prejudice was foreseeable. *Marzullo v. State of Maryland*, 561 F.2d 540, 546 (4th Cir. 1977); *Beasley v. United States*, 491 F.2d 687, 690-91, 696 (6th Cir. 1974); *Moore v. United States*, 432 F.2d 730, 738-39 (3rd Cir. 1970) (en banc).

The courts have also considered whether counsel had reasonably available to him, at the time of the challenged act or omission, a course of action which was either (i) foreseeably less likely to result in prejudice to the defendant, or (ii) likely to result in prejudice which was foreseeably less severe than that resulting from the chosen course. *United States v. Bradford*, 528 F.2d 899, 900 (9th Cir. 1975); *Smith v. United States*, 446 F.2d 1117 (9th Cir. 1971); *Graven-*

### III

■ We turn to appellant's contention that the district court erred because it denied relief in part on the ground that deficiencies in defense counsel's performance did not prejudice appellant's defense.

When the claim of ineffective assistance of counsel rests upon specific acts and omissions of counsel at trial, as it does in this case, relief will be granted only if it appears that the defendant was prejudiced by counsel's conduct. We have found no holding to the contrary.

The leading case is *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). In *Chambers*, defense counsel first met with the defendant a few minutes before the beginning of the defendant's retrial on a robbery charge. As a result of counsel's belated appearance he failed to object to certain adverse evidence, even though this evidence had been suppressed in the earlier trial. Defendant's subsequent petition for habeas corpus, asserting ineffective assistance of counsel, was dismissed because it appeared defendant had not been prejudiced. The Supreme Court affirmed, stating:

The claim that [counsel] was unprepared centered around his allegedly inadequate efforts to have the guns and ammunition excluded from evidence. But the Court of Appeals found harmless any error in the admission of the bullets and ruled that the guns and other materials seized from the car were admissible evidence. Hence the claim of prejudice from the substitution of counsel was without substantial basis. In this posture of the case we are not inclined to disturb the judgment of the Court of Appeals as to what the state record shows with respect to the adequacy of counsel. Unquestionably, the courts should make every effort to effect early appointments of counsel in all cases. But we are not disposed to fashion a *per se* rule requiring reversal of every conviction following tardy appointment of counsel or to hold that, whenever a habeas corpus petition alleges a belated appointment, an evidentiary hearing must be held to determine whether the defendant has been denied his constitutional right to counsel. The Court of Appeals reached the right result in denying a hearing in this case.

*Id.* at 53–54, 90 S.Ct. at 1982.[11]

mier v. United States, 399 F.2d 677, 678–79 (9th Cir. 1968); *Sanchez v. United States*, 398 F.2d 799, 800 (9th Cir. 1968); *Andrews v. United States*, 403 F.2d 341, 343–44 (9th Cir. 1968); *Brubaker v. Dickson*, 310 F.2d 30, 35–37 (9th Cir. 1962); *Marzullo v. State of Maryland*, *supra*, 561 F.2d at 546–47; *Beasley v. United States*, *supra*, 491 F.2d at 696; *Herring v. Estelle*, 491 F.2d 125, 129 (5th Cir. 1974); *United States ex rel. Green v. Rundle*, 434 F.2d 1112, 1115 (3d Cir. 1970); *Moore v. United States*, *supra*, 432 F.2d at 739; *Coles v. Peyton*, 389 F.2d 224, 227 (4th Cir. 1968).

11. Courts of appeals have held regularly, and in line with *Chambers*, that reversal is not required where the defendant suffered no prejudice as a result of the asserted trial errors underlying the charge of ineffective assistance. *See, e. g.*, in the Third Circuit, *United States v. Crowley*, 529 F.2d 1066, 1070 (3d Cir. 1976); *United States ex rel. Green v. Rundle*, 434 F.2d 1112, 1115 (3d Cir. 1970); in the Fifth Circuit, *Cheely v. United States*, 535 F.2d 934, 936 (5th Cir. 1976); *Loftis v. Estelle*, 515 F.2d 872, 876 (5th Cir. 1975); in the Seventh Circuit, *United States v. Ingram*, 477 F.2d 236, 240 (7th Cir. 1973); in the Eighth Circuit, *McQueen v. Swen-*

son, 560 F.2d 959, 961 & n.4 (8th Cir. 1977); *Monteer v. Benson*, 574 F.2d 447, 451 (8th Cir. 1978); *United States v. Easter*, 539 F.2d 663, 666 (8th Cir. 1976); and in the District of Columbia Circuit, *United States v. Moore*, 180 U.S.App.D.C. 227, 554 F.2d 1086, 1089 (1976). *See also United States v. Shea*, 436 F.2d 740, 743 (9th Cir. 1970), *following remand*, 445 F.2d 856 (9th Cir. 1971); *Speer v. United States*, 388 F.2d 110 (9th Cir. 1968). In the Sixth Circuit, *compare United States v. Sumlin*, 567 F.2d 684, 688–89 (6th Cir. 1977), *with Beasley v. United States*, 491 F.2d 687, 696–97 (6th Cir. 1974). In the Fourth Circuit, *compare Marzullo v. Maryland*, 561 F.2d 540, 546 (4th Cir. 1977) (assuming "prejudicial" effect of attorney's failure to challenge jury made aware of other charges against accused) *with Coles v. Peyton*, 389 F.2d 224, 226 (4th Cir. 1968).

The prejudice requirement is also reflected in cases denying relief, without inquiry into the reasonableness of the attorney's actions, when the court had concluded that evidence not objected to was admissible or that a *motion to* suppress not made would have been rejected if it had been, or that advice given without proper factual or legal inquiry was nonetheless cor-

Precedents relied upon by appellant for the proposition that prejudice is irrelevant when the right to counsel is denied (*Geders v. United States*, 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976); *Herring v. New York*, 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); and *Powell v. Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932)) are different from *Chambers* and the case at bar.

In *Gideon*, no defense counsel was appointed. In *Geders, Herring, Glasser*, and *Powell*, defense counsel were appointed but were prevented from discharging functions vital to effective representation of their clients. In *Geders*, defense counsel was not permitted to confer with his client during an overnight mid-trial recess. In *Herring*, a state statute barred final summation by defense counsel. In *Glasser*, counsel was forced to represent two defendants with conflicting interests, impairing his ability to fully serve either. In *Powell*, counsel was denied an adequate opportunity to confer with the defendant or prepare for trial. Reversal is automatic in such cases for reasons discussed in *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). In *Holloway*, as in *Glasser*, defense counsel was required to serve defendants probably having conflicting interests. The court said, "The mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters." *Id.* at 490, 98 S.Ct. at 1182. When no counsel is provided, or counsel is prevented from discharging his normal functions, the evil lies in what the attorney does not do, and is either not readily apparent on the record, or occurs at a time when no record is made. "Thus an inquiry into a claim of harmless error here would require, unlike most cases, unguided speculation," *id.* at 491, 98 S.Ct. at 1182, and a rule requiring that the record reflect that the defendant was "prejudiced . . . in some specific fashion would not be susceptible to intelligent, even handed application." *Id.* at 490, 98 S.Ct. at 1182.[12] This situation is to be distinguished from the usual one in which a harmless error rule is applied: "In the normal case where a harmless error rule is applied, the error occurs at trial and its scope is readily identifiable. Accordingly, the reviewing court can undertake with some confidence its relatively narrow task of assessing the likelihood that the error materially affected the deliberations of the jury." *Id.* at 490, 98 S.Ct. at 1182.

■ The present case is unlike *Geders, Herring, Gideon, Glasser, Powell* and *Holloway* in the very respects that made inquiry into prejudice inappropriate in those cases. In this case, appellant does not assert that he was denied counsel at trial, or that counsel, though present, was prevented from performing a critical function or otherwise impeded in the advocacy of appellant's cause. Rather, appellant contends that although he had an attorney present and acting freely on his behalf, he did not have effective assistance of counsel because his attorney erred in specific respects in the course of trial—by failing to move to suppress evidence, failing to object to evidence, and failing to stipulate to a prior conviction to avoid damaging government proof. As in *Chambers*, these omissions were not forced on defense counsel. Their impact appears on the face of the trial record. Their prejudicial effect can be evaluated from that record with reasonable certainty. In such a case there is no reason to reverse a conviction if it appears that the defense was not prejudiced by the alleged inadequacies of counsel's performance.

rect. *See Sand v. Estelle*, 551 F.2d 49, 51 (5th Cir. 1977); *United States v. Martin*, 489 F.2d 674, 677 (9th Cir. 1973); *Weller v. United States*, 369 F.2d 919, 922 (9th Cir. 1966).

12. *See also, Herring v. New York*, 422 U.S. 853, 863, 95 S.Ct. 2550, 45 L.Ed.2d 593 (1975); *Glasser v. United States*, 315 U.S. 60, 75- 76, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

■ There is a further reason for granting relief in cases of this kind only when the defendant has been prejudiced. Most of the deficiencies to which appellant points consist of failure by appellant's counsel to object to the admission of evidence allegedly obtained in violation of the Constitution. These underlying errors could have been reviewed on direct appeal only as plain error and, therefore, only on a showing of prejudice.[13] Moreover, they could be relied upon as in themselves justifying collateral attack, rather than as supporting an allegation of ineffective assistance of counsel, only on a showing of both actual prejudice from the error and good cause for the procedural default.[14] If such errors may be successfully attacked where no prejudice appears simply by asserting them under the name of ineffective assistance of counsel, the requirement that prejudice be shown to challenge these errors on direct appeal or collateral attack would be empty form.

Two cautionary comments are in order.

■ If counsel is charged with multiple errors at trial, absence of prejudice is not established by demonstrating that no single error considered alone significantly impaired the defense—prejudice may result from the cumulative impact of multiple deficiencies.

■ Finally, the requirement that prejudice appear does not mean that relief is available only if the defendant would have been acquitted but for counsel's blunders.

*Thomas v. Wyrick,* 535 F.2d 407, 414 (8th Cir. 1976). The guilty as well as the innocent are entitled to a fair trial, and "[t]he assistance of trial counsel is often a requisite to the very existence of a fair trial." *Argersinger v. Hamlin,* 407 U.S. 25, 31, 92 S.Ct. 2006, 2009, 32 L.Ed.2d 530 (1972). *See also Gideon v. Wainwright, supra,* 372 U.S. at 342-45, 83 S.Ct. 792.

## IV

■ Applying these principles we conclude that appellant's petition was properly denied. The errors and omissions laid at counsel's door clearly do not establish that the assistance afforded was constitutionally inadequate.

Appellant claims his counsel should have moved to suppress the fruits of appellant's arrest because the arrest was without a warrant. But the arrest was based on probable cause—appellant's fingerprints had been found in the Stewart home—and it was accomplished in a public place—the probation office of the Hall of Justice. Such an arrest does not require a warrant.[15]

The warrantless search of appellant's home was unobjectionable; appellant admitted in his petition for habeas corpus that he consented to the search.[16]

Appellant's counsel cannot be faulted for failing to object to the admission of statements made by appellant to the police after his arrest. The interrogation was proper under pre-*Escobedo*[17] standards in effect at the time of the trial; it was not incompe-

13. *United States v. Atkinson,* 297 U.S. 157, 159-60, 56 S.Ct. 391, 80 L.Ed. 555 (1936); *United States v. Johnson,* 454 F.2d 700, 701 (9th Cir. 1972); *Marshall v. United States,* 409 F.2d 925, 927 (9th Cir. 1969); *Reisman v. United States,* 409 F.2d 789, 791 (9th Cir. 1969).

14. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). *See also Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976); *Davis v. United States,* 411 U.S. 233, 244, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973).

15. *See United States v. Santana,* 427 U.S. 38, 42, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976); *Unit-*

*ed States v. Watson,* 423 U.S. 411, 417, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *Draper v. United States,* 358 U.S. 307, 310 11, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *Carroll v. United States,* 267 U.S. 132, 156-57, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

16. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Davis v. United States,* 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453 (1946).

17. *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

tent for appellant's counsel to consider those procedures "to be as valid as the [four] dissenters in that case thought them to be." *McMann v. Richardson, supra,* 397 U.S. at 773, 90 S.Ct. at 1450.

The same can be said of counsel's failure to anticipate the holding three years later of *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and object to admission of testimony regarding identification of appellant in a counsel-less lineup.

Appellant claims that because of his counsel's ineptness, the jury learned that appellant's probation on an earlier conviction had been revoked. Even if counsel was negligent in this respect, the error was not prejudicial. Had counsel stipulated to the conviction as appellant now says she should have, the fact that appellant had been convicted would still have been before the jury. The only additional fact to come before the jury because of counsel's failure to stipulate was that probation on the earlier conviction had been revoked. The added prejudice from this additional information was surely slight. Moreover, it would have been obvious from the facts the jurors already knew that appellant would not have been allowed to remain on probation.

Finally, if appellant's counsel erred in not telling appellant of his right to appeal, the error was of no consequence. The district court found that appellant knew of his appellate rights independently of counsel,[18] and that finding is not clearly erroneous. *See Whitney v. Craven,* 460 F.2d 1267 (9th Cir. 1972).

AFFIRMED.

HUFSTEDLER, Circuit Judge, concurring and dissenting; in which Circuit Judges ELY and HUG concur:

I agree with the majority that the Sixth Amendment requires that "reasonably competent and effective" representation be afforded to persons accused of crime. But I cannot agree that the victims of incompetent counsel must be denied relief absent a showing of prejudice. The right to the assistance of counsel is so fundamental that failure to provide constitutionally adequate counsel at trial can never be dismissed as harmless error. The majority's requirement of a showing of prejudice impermissibly dilutes the Sixth Amendment guaranty. Its diminution of the right to counsel cannot be reconciled with the teachings of the Supreme Court, nor with the authorities in other Circuits that have decided the issue.

I

Defendants who have been denied their Sixth Amendment right to the assistance of reasonably competent counsel at trial should be entitled to relief without a showing of prejudice. The Supreme Court has long held that deprivation of the constitutionally-required assistance of counsel can never be treated as harmless error, because of the importance of the rights involved. More than three decades ago in *Glasser v. United States* (1942) 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, the Supreme Court held that automatic reversal was required, without a showing of prejudice, when Sixth Amendment rights were violated by requiring joint representation at trial of defendants with conflicting interests. "The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial," the Court noted. (315 U.S. at 76, 62 S.Ct. at 467). A quarter century later in *Chapman v. California* (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, the Supreme Court reiterated its position that the harmless error doctrine is inapplicable to violations of the right to counsel. The Court stated that the right to counsel was among

18. This finding distinguishes *Riser v. Craven,* 501 F.2d 381, 382 (9th Cir. 1974), and *Sanders v. Craven,* 488 F.2d 478, 479–80 (9th Cir. 1973).

the "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error . . ." (386 U.S. at 23 & n.8, 87 S.Ct. at 828).

In recent years the Supreme Court repeatedly has reaffirmed the same principle. In *Herring v. New York* (1975) 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593, the Court applied the automatic reversal rule to the conviction of a defendant whose counsel was denied the opportunity to present closing argument during a bench trial. The Court held that because the ruling violated the Sixth Amendment right to effective assistance of counsel, reversal was required, regardless of the absence of prejudice to the defense.[1] The following year, in *Geders v. United States* (1976) 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592, the Court reversed the conviction of a defendant who had been barred from consulting his attorney during an overnight trial recess. Despite a finding that the defense had not been prejudiced, the Court applied the automatic reversal rule because the defendant had been denied the effective assistance of counsel. Most recently, in *Holloway v. Arkansas* (1978) 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426, the Court, citing *Glasser* and *Chapman,* reaffirmed the "general rule" of automatic reversal for violations of the Sixth Amendment right to effective assistance of counsel. (*Id.,* 435 U.S. at 489, 98 S.Ct. at 1181).

The *Holloway* Court reversed the convictions of co-defendants who had been required to accept joint representation at trial, despite their conflicting interests.

These cases indicate that the right to the effective assistance of counsel is more than a right to be free from prejudicial trial errors. The right to competent counsel is also based on considerations of procedural fairness that apply regardless of the strength of the case against an accused.[2] As the majority itself recognizes, "The guilty as well as the innocent are entitled to a fair trial, and '[t]he assistance of trial counsel is often a requisite to the very existence of a fair trial.' *Argersinger v. Hamlin,* 407 U.S. 25, 31, 92 S.Ct. 2006, 2009, 32 L.Ed.2d 530 (1972)." (Majority Opinion at 1333). Application of the harmless error doctrine would impair defendants' right to the very presence of counsel, for defendants faced with overwhelming evidence of guilt might never be able to demonstrate prejudice from the absence of counsel.[3] Because the assistance of counsel is so essential to the fundamental fairness of criminal proceedings, *Gideon v. Wainwright* (1963) 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; *Powell v. Alabama* (1932) 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158, courts "do not stop to determine whether prejudice resulted" when counsel is denied. *Hamilton v. Alabama* (1961) 368 U.S. 52, 55, 82 S.Ct. 157,

---

**1.** The absence of prejudice in *Herring* was emphasized by one dissenting justice: "Whatever theoretical effect the denial of argument may have had on the judgment of conviction, its practical effect on the outcome must have been close to nothing." 422 U.S. 853, 870, 95 S.Ct. 2550, 2559, 45 L.Ed.2d 593 (Rehnquist, J., dissenting).

**2.** *See Beasley v. United States* (6th Cir. 1974) 491 F.2d 687, 696–97 ("Because Petitioner was represented by incompetent and ineffective counsel, his conviction cannot stand. Harmless error tests do not apply in regard to the deprivation of a procedural right so fundamental as the effective assistance of counsel. *Glasser v. United States,* 315 U.S. 60, 76, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Chapman v. California,* 386 U.S. 18, 23, 43, 87 S.Ct. 824, 827, 837, 17 L.Ed.2d 705 (Stewart, J., concurring) (1967).")

**3.** While the majority notes that to show prejudice a defendant need not demonstrate that he would have been acquitted but for his counsel's errors, (Majority Opinion at 1333), there are still defendants who would be unable to show prejudice from the absence of counsel. *See Betts v. Brady* (1942) 316 U.S. 455, 472–73, 62 S.Ct. 1252, 1261, 86 L.Ed. 1595 ("[If] it had appeared that the petitioner was, for any reason, at a serious disadvantage by reason of the lack of counsel, a refusal to appoint would have resulted in the reversal of a judgment of conviction."). It is precisely because the right to counsel is so fundamental that *Betts v. Brady* has been overruled, and courts no longer inquire into the prejudicial impact of violations of the right to counsel. *Gideon v. Wainwright* (1963) 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799.

159, 7 L.Ed.2d 114. Likewise, when the representation afforded a defendant is not constitutionally adequate, " '[a] conviction must be reversed . . . even if no particular prejudice is shown and even if the defendant was clearly guilty.' *Chapman v. California,* 386 U.S. 18, 43, 87 S.Ct. 824, 837, 17 L.Ed.2d 705 (1967) (Stewart, J., concurring), see also *id.,* at 23, and n.8, 87 S.Ct. 824 at 827 (opinion of the court)." *Holloway v. Arkansas* (1978) 435 U.S. at 489, 98 S.Ct. at 1181.

The Supreme Court's decision in *Chambers v. Maroney* (1970) 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, does not undermine the automatic reversal rule. The issue in *Chambers* was not whether prejudice must appear before a victim of constitutionally ineffective counsel is entitled to relief. Instead, *Chambers* involved the separate question of what constitutes constitutionally ineffective assistance of counsel. Specifically, the Court was asked to decide whether tardy appointment of counsel required a finding of *per se* ineffective assistance as a matter of law.[4] The Supreme Court refus-

ed to adopt a rule of *per se* ineffective assistance, and noted that courts should assess the impact of tardy appointment on counsel's performance before deciding whether ineffective assistance was rendered.[5] The trial court's finding that Chambers had not been denied the effective assistance of counsel was affirmed. Thus, *Chambers* does not hold that denials of "reasonably competent and effective" assistance of counsel must be ignored unless prejudice is shown. The Supreme Court's subsequent decisions in *Herring, Geders,* and *Holloway* indicate that prejudice need not be demonstrated, once ineffective assistance of counsel is shown.

The majority's observation that "[c]ourts of appeals have held regularly, and in line with *Chambers,* that reversal is not required where the defendant suffered no prejudice" (Majority Opinion at n.11) is misleading. Neither *Chambers* nor the circuit court decisions requires any showing of prejudice apart from the demonstration

---

4. The Supreme Court in *Chambers* was faced with the issue of what must be shown to establish that counsel was constitutionally ineffective. *Chambers v. Maroney* (1970) 399 U.S. 42, 53, 90 S.Ct. 1975, 1982, 26 L.Ed.2d 419 ("No charge is made that [defense counsel] was incompetent or inexperienced; rather the claim is that his appearance for petitioner was so belated that he could not have furnished effective legal assistance at the second trial.") In *United States ex rel. Mathis v. Rundle* (3rd Cir. 1968) 394 F.2d 748, the Third Circuit had held that denial of effective assistance of counsel could be presumed from a showing of belated appointment unless the prosecution proved that the defense had not been prejudiced by the tardy appointment. In *Chambers* the Third Circuit had construed "this to mean that the prima facie ineffectiveness or the inherent prejudice due to late appointment of counsel may properly be overcome *either* by evidence produced by the state in an evidentiary hearing showing that there was no prejudice *or* by adequate affirmative proof *otherwise* appearing in the record demonstrating that the appellant was not prejudiced." *United States ex rel. Chambers v. Maroney* (3rd Cir. 1969) 408 F.2d 1186, 1190, *affirmed sub nom. Chambers v. Maroney* (1970) 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419. Thus, the Supreme Court in

*Chambers* was not faced with the issue of whether a separate showing of prejudice was required once counsel was shown to have been ineffective.

5. The Supreme Court in *Chambers* affirmed the Third Circuit's decision and held that a mere showing of late appointment was not sufficient to establish that counsel had been constitutionally ineffective. While the Court indicated that the prejudicial effects of late appointment on the defense case were relevant to determining whether counsel was ineffective, the Court never considered whether, once counsel was determined to be ineffective, prejudicial results of this ineffectiveness had to be demonstrated. Indeed, shortly after the Supreme Court affirmed the Third Circuit's decision in *Chambers,* the Third Circuit, sitting en banc, held the automatic reversal rule applicable to cases of constitutionally ineffective counsel. *Moore v. United States* (3rd Cir. 1970) 432 F.2d 730, 737 ("[T]he ultimate issue is not whether a defendant was prejudiced by his counsel's act or omission, but whether counsel's performance was at the level of normal competency. That the client was prejudiced by a failure in performance is of course evidentiary on the issue.").

that trial counsel did not conform to the constitutional standard of competency.[6] Courts have considered the prejudicial impact of attorney behavior only to determine whether counsel measured up to the constitutional standard of competency.[7] Thus, cases that the majority reads as holding that "reversal is not required where the defendant suffered no prejudice" actually are based on holdings that the reasonable competency standard had not been violated.[8] They do not hold that violations of the

6. *Chambers,* as noted above, does not require a separate showing of prejudice. *See* notes 4 & 5, *supra,* and accompanying text. That *Chambers* is not authority for the majority's harmless error position is reflected in the fact that *Chambers* is not even cited in any of the numerous circuit court decisions that the majority interprets as recognizing the need for a separate showing of prejudice. *See* Majority Opinion at n.11.

Two circuits—the Third and the Sixth—have expressly adopted the automatic reversal rule for cases of constitutionally ineffective trial counsel. *Moore v. United States* (3rd Cir. 1970) 432 F.2d 730, 737 (en banc), *see* note 5, *supra; Beasley v. United States* (6th Cir. 1974) 491 F.2d 687, 696, *see* note 2, *supra.* The cases from the Third and Sixth Circuits that the majority cites are not inconsistent with the automatic reversal rule. In *United States ex rel. Green v. Rundle* (3rd Cir. 1970) 434 F.2d 1112, the Third Circuit, following *Moore,* considered the impact of a failure to investigate an alibi defense in assessing whether or not counsel was constitutionally competent. The court indicated that where the significance of the attorney's failure could not be determined, ineffective assistance of counsel could be presumed, and reversal would be required. In *United States v. Crowley* (3rd Cir. 1976) 529 F.2d 1066, the Third Circuit limited its consideration of the harmlessness of the "denial of counsel at a hearing on a motion to withdraw a guilty plea" to cases "where (1) the defendant alleges neither that he is innocent nor that his original plea was involuntary, . . . and where (2) it is clear that the defendant is not entitled to withdraw his plea." 529 F.2d at 1070–71 (citation omitted). Thus, *Crowley* did not alter the general rule of automatic reversal for denial of the effective assistance of counsel at trial; neither did *United States v. Sumlin* (6th Cir. 1977) 567 F.2d 684, where the defendant claimed ineffective assistance of counsel during interrogation by the FBI. Noting that "[t]his claim is of a different type altogether than those that deal with errors at trial or in trial preparation," 567 F.2d at 689, the Sixth Circuit failed to hold that effective assistance of counsel had been denied. The court observed that any error by counsel during the interrogation was harmless beyond a reasonable doubt.

The Fourth Circuit has reversed cases where counsel was ineffective without inquiring into the harmlessness of the error. *Tolliver v. United States* (4th Cir. 1977) 563 F.2d 1117; *Marzullo v. Maryland* (4th Cir. 1977) 561 F.2d 540. The majority interprets *Marzullo* as involving circumstances where prejudice was assumed from the type of attorney errors involved. (Majority Opinion at n.11). While it may be true that in most cases ineffective counsel could be presumed to have hurt the defense, the significance of the Fourth Circuit decisions is that they refuse to inquire into the extent of prejudice produced by the incompetence of counsel. The majority's explanation that prejudice is assumed is just another label for an automatic reversal rule. Moreover, it is not necessarily true that prejudice always could have been found had the courts chosen to inquire. In *Tolliver,* for example, the court noted that an attorney's error prompted the defendant to accept "a good deal" from the government that may have been better than any he would have obtained otherwise. 563 F.2d at 1121. Yet the court refused to explore this line of inquiry and vacated the guilty plea because "[t]he fact remains that Tolliver was entitled to effective assistance of counsel . . . and this he did not receive." 563 F.2d at 1121.

7. *See* notes 8 & 18, *infra,* and accompanying text.

8. For example, the District of Columbia Circuit in *United States v. Moore* (1976) 180 U.S.App. D.C. 227, 554 F.2d 1086, held that because a defendant had failed to show a substantial violation of counsel's duties he had not demonstrated that his counsel had been constitutionally ineffective. Dictum in *Moore* suggested that if counsel was found to be constitutionally ineffective, reversal would not be required if the prosecution proved beyond a reasonable doubt that the error was harmless. 554 F.2d at 1089. But that statement was based on *United States v. DeCoster* (1973) 159 U.S.App.D.C. 326, 487 F.2d 1197, *opinion after remand* No. 72–1283 (D.C.Cir. Oct. 19, 1976), *opinion vacated* March 17, 1977, which has been vacated and taken en banc to decide precisely this issue.

The Fifth Circuit in *Cheely v. United States* (5th Cir. 1976) 535 F.2d 934, and *Loftis v. Estelle* (5th Cir. 1975) 515 F.2d 872, also held that the actions of counsel had not violated that circuit's standard of reasonable competency, which is applied differently to cases of retained counsel than to cases of appointed counsel. The Seventh Circuit in *United States v. Ingram* (7th Cir. 1973) 477 F.2d 236, held that the actions of counsel had not violated the

reasonable competency standard may be harmless error. Once trial counsel has been held to have been constitutionally ineffective, no circuit has denied relief because the error was harmless.[9]

I reject the suggestion that the automatic reversal principle can be restricted to cases where no counsel was present or where competent counsel was prevented from performing a vital defense function. The Sixth Amendment right to counsel proscribes with equal force denials of reasonably competent and effective counsel, for "[i]t has long been recognized that the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson* (1970) 397 U.S. 759, 771 n.14, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763. It makes little sense to distinguish between cases where counsel is denied and cases where counsel is incompetent because representation by incompetent counsel may be little or no better than no representation at all. It makes even less sense to distinguish between cases of incompetent counsel and cases where competent counsel is prevented from per-

forming certain functions. Defendants represented by incompetent attorneys surely are at least as bad off as defendants with competent counsel who are barred from presenting closing argument at a bench trial.[10] A holding that *pro forma* appointment of counsel is sufficient to remove Sixth Amendment violations from the automatic reversal rule would undermine the purpose of *Gideon*.[11]

The fact that the automatic reversal rule is based, in part, on the difficulty of assessing the prejudicial impact of attorney errors does not justify restricting the rule to cases where counsel is denied or where counsel is barred from performing certain functions. Difficulties in assessing the extent of prejudice are simply another reason for applying the automatic reversal rule to denials of the assistance of competent counsel. The majority, quoting from *Holloway*, notes that because "the evil lies in what the attorney does not do, . . . 'an inquiry into a claim of harmless error here would require, unlike most cases, unguided speculation.'" (Majority Opinion at 1332, quot-

farce and mockery test, a test that the Circuit later discarded in *United States ex rel. Williams v. Twomey* (7th Cir. 1975) 510 F.2d 634.

Counsel was found to have been constitutionally ineffective in *United States v. Easter* (8th Cir. 1976) 539 F.2d 663. The Eighth Circuit held in *Easter* that counsel's failure to file a suppression motion had prejudiced the defense and thus violated the defendant's right to effective assistance of counsel. Although the court required a showing of prejudice to establish the constitutional violation, it did not inquire into whether this violation affected the outcome of the case. The court expressly reserved judgment on the merits of the suppression claim, aside from noting that it raised a significant question. In *Monteer v. Benson* (8th Cir. 1978) 574 F.2d 447, the Eighth Circuit affirmed a trial court's finding that a defendant had failed to establish a violation of his right to reasonably competent counsel. 574 F.2d at 451. The *Monteer* court further opined that "in the alternative," even if the defendant had been denied the effective assistance of counsel, his conviction could not be reversed unless prejudice was shown.

**9.** The Eighth Circuit's decision in *McQueen v. Swenson* (8th Cir. 1974) 498 F.2d 207, is the closest that any circuit has come to denying relief for an undisputed violation of the right to

effective assistance of counsel. In *McQueen* the Eighth Circuit, applying the "farce and mockery standard," held that counsel had failed to perform his duty of investigation. The court remanded the case to the district court to determine whether counsel's failure had prejudiced the defense. 498 F.2d at 218. On remand, the district court found that the defendant had not been prejudiced by the ineffective assistance of counsel. The Eighth Circuit on appeal held the district court's finding "clearly erroneous" and reversed the conviction. *McQueen v. Swenson* (8th Cir. 1977) 560 F.2d 959, 961.

**10.** *See Herring v. New York* (1975) 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593.

**11.** The original panel that heard this case noted, "We cannot agree . . . that there is a significant difference between a case in which counsel was absent and one in which, although counsel was present, his performance has been found to have fallen below that which was constitutionally required. After all, the purpose of *Gideon* was not merely to supply criminal defendants with warm bodies, but rather to guarantee reasonably competent representation." *Cooper v. Fitzharris* (9th Cir. 1977) 551 F.2d 1162, 1164.

ing *Holloway,* 435 U.S. at 491, 98 S.Ct. at 1182). Yet the majority argues that the *Holloway* principle should not apply to cases of ineffective counsel, despite the fact that claims of ineffective assistance are based on what the attorney does not do. This is precisely the kind of claim at issue in this case. Cooper alleges that the representation afforded to him was constitutionally inadequate because of what his attorney failed to do.[12] From the standpoint of the record, cases in which defendants were denied the effective assistance of counsel are indistinguishable from cases where competent counsel was prevented from acting.[13] The impact of the attorney's failure or inability to act cannot be precisely assessed in either type of case. Ultimately, we can never know what would have happened had competent representation been provided, for even seemingly hopeless cases may take unexpected turns in the hands of effective counsel.

The rule of automatic reversal for violations of the right to effective assistance of counsel is in no sense inconsistent with the requirement that prejudice be shown before other kinds of errors that are challenged for the first time on appeal or by collateral attack can warrant reversal. The plain error doctrine and *Wainwright v. Sykes* (1977) 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594, are both premised on the concept that defendants waive their right to complain about certain kinds of errors by not challenging them in the trial court. Defendants who are competently defended thus may be deemed to have waived claims which their counsel for tactical reasons decided not to raise below. But claims that were never raised because of counsel's incompetence cannot be presumed to have been waived, as courts have recognized.[14] Otherwise, lawyers would be able to waive claims of their own incompetence.[15] Because claims of incompetent counsel are not

12. Cooper alleges that his counsel failed to file a suppression motion, failed to object to admission of certain evidence, failed to stipulate as to Cooper's prior conviction, and failed to inform Cooper of his right to appeal. These alleged failures to act are among the very kinds of claims that the *Supreme Court* in *Holloway* described as justifying application of the automatic reversal rule. *Holloway v. Arkansas, supra,* 435 U.S. at 490, 98 S.Ct. at 1181 ("Generally speaking a conflict may also prevent an attorney from challenging the admission of evidence . . . ").

13. The majority distinguishes *Holloway* as a case where "[t]he mere physical presence of an attorney does not fulfill the Sixth Amendment guarantee when the advocate's conflicting obligations have effectively sealed his lips on crucial matters." (Majority Opinion at 1332). Yet, from the standpoint of the state of the record, this situation is no different from one in which counsel's incompetence has effectively sealed his lips. In either case the attorney's failure to act means that an inquiry into prejudice would require "unguided speculation."

14. This court, in *United States v. Marshall* (9th Cir. 1973) 488 F.2d 1169, rejected the notion that waiver theories can be applied to cases of incompetent counsel, ("The [waiver] theory breaks down in the face of the fact that most criminal defendants who can retain counsel are not in any position to judge the competence of

the lawyer whom they hire. They have to take him on faith—in reliance on the fact that he has been admitted to practice. Unfortunately, that fact does not guarantee that he is competent to defend a criminal case." 488 F.2d at 1193.) in holding that the same standard of *effective assistance of counsel applied in cases* of retained counsel as in cases of appointed counsel. The rule of *Wainwright v. Sykes* (1977) 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594, does not apply to habeas petitions challenging the competency of counsel, 433 U.S. at 88 n. 12, 97 S.Ct. at 2507; nor should the reasoning behind *Wainwright* suggest that the harmless error approach be applied to denials of the effective assistance of counsel. Justice White, in his concurring opinion in *Wainwright,* noted that claims of ineffective assistance of counsel could not be precluded by the collateral attack rules. 433 U.S. at 99, 97 S.Ct. at 2513 (White, J., concurring). Justice Stevens stated in his concurrence that "*assuming the lawyer's competence,* the client must accept the consequences of his trial strategy." 433 U.S. at 95 n. 2, 97 S.Ct. at 2510 (Stevens, J., concurring) (emphasis supplied).

15. *See Wainwright v. Sykes* (1977) 433 U.S. 72, 118, 97 S.Ct. 2497, 2523, 53 L.Ed.2d 594 (Brennan, J., dissenting) ("Obviously, as a practical matter, a trial counsel cannot procedurally waive his own inadequacy.")

interchangeable with claims of other constitutional errors, the automatic reversal rule will not undermine standards of appellate review for other constitutional claims.[16]

## II

The automatic reversal rule does not require that convictions be overturned upon mere allegations of incompetent counsel. Defendants still must establish that they have been denied "reasonably competent and effective" counsel before they are entitled to relief. Such a showing is not easy to make. As the majority properly indicates, the Constitution does not require perfect representation. Even under the "reasonable competency" standard, a defendant must show that the errors of his attorney were substantial enough to "reflect a failure to exercise the skill, judgment, or diligence of a reasonably competent criminal defense attorney." (Majority Opinion at 1330).

In assessing the adequacy of representation, the nature of the alleged attorney errors and their potential impact on the outcome of the case may be relevant.[17] This does not mean that prejudice must be shown to demonstrate that counsel was constitutionally ineffective. Rather, it means that the magnitude of the attorney errors may be relevant to determining whether counsel was constitutionally competent. The outcome of many cases may be identical under both the majority's standard and the automatic reversal rule, for attorneys who made errors that are likely to have "mattered" are more likely to be found to have been ineffective, than are attorneys who do not.[18] The difference between the two standards is that the majority would deny relief to those who can show that their attorneys were constitutionally inept, but who cannot demonstrate precisely how that incompetence affected their defense. Thus, even a defendant whose counsel had been totally inept could be denied relief if it is not possible to demonstrate from the record that anything could have been done to help his case. Under the automatic reversal rule relief would not be denied to any defendant who demonstrated that he had been denied the assistance of competent counsel.

## III

While the majority requires a showing of prejudice before violations of the right to

**16.** Claims of incompetent counsel are distinguishable from claims of other kinds of error, because incompetence claims turn on the reasons for an attorney's failure to present a defense, rather than simply the merits of the defenses themselves. The majority's fear that collateral attack rules will be undermined must rest on a distrust of the ability of courts to distinguish between genuine claims of inadequate counsel and disguised collateral attacks. Since the majority presumes courts to be capable of determining the more subjective issue of prejudice, it is curious that they would distrust the ability of judges to apply the objective standard of attorney competence.

**17.** For example, if an attorney shows that he failed to pursue a particular defense because it would not have helped his client as much as an alternative defense, the propriety of the attorney's choice is relevant to the competency issue. Other courts that have adopted the automatic reversal rule have recognized that the significance of the alleged errors of counsel may be relevant to determining whether competent representation was provided. *See, e. g., Moore v. United States* (3rd Cir. 1970) 432 F.2d 730, 737 (en banc). *See also* note 5, *supra*.

**18.** This may be the reason why the majority construes cases from other circuits that are consistent with the automatic reversal rule as supporting their position on the grounds that prejudice could be presumed from the type of attorney errors involved. *See, e. g., Marzullo v. Maryland* (4th Cir. 1977) 561 F.2d 540. Some courts have confused the inquiry into whether attorney errors were significant enough to constitute ineffective counsel with the question of whether the ineffectiveness of counsel affected the outcome of the case. *See* note 8, *supra*, and accompanying text. *See also United States v. DeCoster*, No. 72-1283 (D.C.Cir. Oct. 19, 1976) *opinion vacated*, March 17, 1977. ("we distinguish between the question of whether counsel's violations were consequential, *i. e.*, impaired the defense, and the question of whether the impairment was harmful, *i. e.*, affected the outcome. . . . We avoid using the term 'prejudice' because it blurs these two inquiries." (citation omitted).)

effective assistance of counsel will be redressed, my brothers do not specify who bears the burden of proving prejudice or how heavy the burden will be.[19] While I do not agree that prejudice must be shown, if the majority nonetheless adopts a harmless error approach, *Chapman v. California* (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, would govern the burden of proving prejudice. The Supreme Court held in *Chapman* that "constitutional error . . casts on someone other than the person prejudiced by it a burden to show that it was harmless." (386 U.S. at 24, 87 S.Ct. at 828). Thus, the prosecution bears the burden of proving that the constitutional error "was harmless beyond a reasonable doubt." (386 U.S. at 24, 87 S.Ct. at 828). This allocation of the burden of proving prejudice is supported by the fact that the government bears the burden of proving guilt beyond a reasonable doubt, as well as the fact that "proof of prejudice may well be absent from the record precisely because counsel has been ineffective." *United States v. DeCoster* (1973) 159 U.S.App.D.C. 326, 333, 487 F.2d 1197, 1204. The Supreme Court in *Chapman* explicitly excluded violations of the right to counsel from harmless error tests and indicated that the automatic reversal rule should apply.[20] If, despite *Chapman*, this Court is to adopt a harmless

error approach, we should at least conform to *Chapman's* requirement that the prosecution prove constitutional errors to be harmless beyond a reasonable doubt. Otherwise, it is hollow formalism to claim that our recognition of the "reasonable competency" standard shows greater respect for Sixth Amendment rights than the "farce and mockery" approach that we are discarding.[21]

## IV

The district court failed to determine whether Cooper was provided with the "reasonably competent and effective" representation that the Sixth Amendment guarantees to him. Instead, the court assumed that Cooper's counsel failed to meet the constitutional standard, but concluded that any violation of Cooper's Sixth Amendment rights would be harmless error. The majority affirms this approach, despite our holding in *Sanders v. Craven* (9th Cir. 1973) 488 F.2d 478, 480, that "[t]he district judge may not circumvent the challenge of denial of effective counsel by, in effect, holding that any error would be harmless and, on that basis, fail to determine whether there has been an impermissible deprivation of Sixth Amendment rights." Thus, the majority sacrifices much of the educative im-

19. The majority appears to suggest that the defendant bears the burden of proving prejudice ("the accused must establish that counsel's errors prejudiced the defense." Majority Opinion at 1327). Yet at another point in the opinion the majority seems to imply that the prosecution might have to establish the absence of prejudice ("absence of prejudice is not established by demonstrating that no single error considered alone significantly impaired the defense." Majority Opinion at 1333). In discussing the decisions of other circuits, the majority appears to adopt a neutral position on the burden of proof issue ("reversal is not required where the defendant suffered no prejudice as a result of the asserted trial errors." Majority Opinion at n. 11). The majority also suggests that the weight of the burden of proof may be something less than that employed by traditional harmless error tests ("the requirement that prejudice appear does not mean that relief is available only if the defendant would

have been acquitted but for counsel's blunders." Majority Opinion at 1333).

20. *Chapman v. California* (1967) 386 U.S. 18, 23 & n. 8, 87 S.Ct. 824, 828, 17 L.Ed.2d 705.

21. The suggestion that the defendant bear the burden of proving prejudice appears to be an artifact of the discarded "farce and mockery" test. *See United States v. DeCoster* (1973) 159 U.S.App.D.C. 326, 330–331, 487 F.2d 1197, 1201–1202. Even the few circuit courts that have recognized the relevance of an inquiry into prejudice have placed the burden of proving prejudice on the prosecution, adopting the *Chapman* "beyond a reasonable doubt" requirement. *Coles v. Peyton* (4th Cir. 1968) 389 F.2d 224, 226; *United States v. DeCoster* (1973) 159 U.S.App.D.C. 326, 333, 487 F.2d 1197, 1204; *United States v. Crowley* (3rd Cir. 1976) 529 F.2d 1066, 1069.

pact that the "reasonable competency" test could have in providing guidance to practicing attorneys about standards of professional competency.

Because the district court failed to determine whether Cooper was provided with "reasonably competent and effective" representation, I would remand the case to permit the district court to make that determination.