**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Anita Lynne ERWIN,**
**Defendant-Appellant.**

No. 79–1774.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 10, 1980.

Decided June 30, 1980.

Michael Stepanian, Rohan & Stepanian, San Francisco, Cal., argued, for defendant-appellant.

Robert P. Feldman, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before ANDERSON and FARRIS, Circuit Judges, and RICHEY,* District Judge.

---

* The Honorable Mary Anne Richey, United States District Judge for the District of Arizona, sitting by designation.

MARY ANNE RICHEY, District Judge.

Appellant was detained by customs officials upon her arrival at San Francisco International Airport from Bangkok, Thailand, and subjected to a baggage search. This search revealed items which, in addition to her apparent physical restrictions in walking and sitting, led customs agents to believe she had something secreted in a body cavity. After appellant refused to submit to a strip search, the agents sought a court order requiring her to submit to a strip search and x-ray, and if the x-ray revealed a foreign object in a body cavity, to submit to a body cavity search as well.

The order was obtained and the x-ray taken, which revealed a foreign body in appellant's vagina. Appellant then removed the object which proved to be packets of heroin encased in a plastic container. Appellant was detained while these events occurred, the detention lasting approximately seven hours, part of which time her attorney was present.

A motion to suppress the heroin was denied by the trial court. That denial is appealed, with four grounds argued in support. Appellant also argues that error occurred in the giving of a jury instruction on deliberate ignorance. We affirm the conviction.

## I. Representation by Counsel at the Order Application

Appellant's attorney learned that the customs agents were preparing an affidavit to seek a court order requiring appellant to submit to a strip search and requested the name of the magistrate to whom the application was going to be made. The assistant United States Attorney in charge of the investigation refused to provide this information and the attorney did not obtain it until after the application had been granted. Appellant now contends that her due process rights of notice and an opportunity to be heard were violated by the government's refusal to allow her attorney to participate in the search order "hearing."

Viewing the government's request for a court order as the equivalent of a search warrant, it becomes clear that appellant had no right to have counsel present during the application, and appellant offers no authority supporting such a right. One court has required the presence of counsel for the accused during a search warrant application where the "search" involved surgical exploration of the accused's body. *See United States v. Crowder,* 543 F.2d 312, 316 (D.C. Cir. 1976), *cert. denied,* 429 U.S. 1062, 97 S.Ct. 788, 50 L.Ed.2d 779 (1977). This case is not applicable here, however, since the health risk to the accused inherent in such a procedure is not present in the search of a body cavity.

■ Since the application for the order was the functional equivalent of an application for a search warrant, traditionally an ex parte proceeding, appellant's due process rights were not violated by the government's refusal to permit her attorney to participate.

## II. Magistrate's Jurisdiction to Issue the Order

■ The appellant next argues that the magistrate had no legal authority to issue the order compelling her to submit to the strip search and x-ray, citing *United States v. Holland,* 552 F.2d 667 (5th Cir. 1977), *opinion withdrawn,* 565 F.2d 383, 384 (5th Cir. 1978). Because we find that the order involved here was nothing more than a search warrant for a body cavity search based upon probable cause, unlike the order in *Holland,* we conclude that the magistrate acted within the scope of his jurisdiction pursuant to Rule 41 of the Rules of Criminal Procedure.

## III. Reasonableness of the Body Cavity Search

■ Appellant argues that the body cavity search exceeded the Fourth Amendment reasonableness standard because her attorney was not allowed to be present during the examination. We cannot agree. The agents took steps to minimize the intrusiveness of the search. They sought a court order before proceeding with the. strip

search, even though they were not legally required to do so; the examination was conducted by a licensed physician with only female agents present; an x-ray was taken to determine the existence of any objects in appellant's abdomen, rather than the more intrusive manual examination; and appellant was allowed to remove the object herself after it was discovered. In short, the agents attempted to minimize the emotional and physical trauma of such a search. *See United States v. Cameron*, 538 F.2d 254, 258 (9th Cir. 1976). Although the presence of counsel may have provided some additional emotional comfort, his absence under these circumstances should not render this otherwise reasonable intrusion unreasonable.

## IV. *Legality of the Detention*

The appellant was detained for about seven hours before she was formally arrested. Appellant argues that this detention was actually an arrest, unsupported by probable cause, and therefore urges the fruit of the search be suppressed. As support, she cites three recent cases where detentions were held to have been arrests because of their length or significant restriction on the detainee's liberty. *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *United States v. Perez-Esparza*, 609 F.2d 1284 (9th Cir. 1979); *United States v. Beck*, 598 F.2d 497 (9th Cir. 1979).

■■ In contrast to these cases, the detention complained of here occurred in the context of a border search. Traditionally, governmental intrusions on citizens' mobility at the international borders are reviewed by the courts under different standards than other police investigatory techniques. *See, e. g., Shorter v. United States*, 469 F.2d 61, 63 (9th Cir. 1972), *cert. denied*, 411 U.S. 918, 93 S.Ct. 1555, 36 L.Ed.2d 310 (1973). Because of the broader powers given to customs officers in carrying out border searches, the standard to determine the propriety of a detention at the border is, did the scope of the detention exceed what was necessary for the agents to conduct a legal border search. *Cf. Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1879–80, 20 L.Ed.2d 889 (1968).

■ The detention of appellant while a warrant was sought was reasonable. Given the strong preference for search warrants in body cavity searches expressed by this court in *United States v. Cameron*, 538 F.2d at 258 and 259, it would be inconsistent for the court now to hold that in trying to follow the preference for a warrant the agents detained a traveler for an excessive period. Indeed, *Cameron* indicates that a reasonable detention while a warrant is being obtained is not invalid. *See* 538 F.2d at 258 n. 7. We conclude the seven hour detention was not improper under the circumstances.

## V. *The Jewell Instruction*

At trial, the court gave an instruction regarding a defendant's deliberate ignorance of certain facts, known as a "Jewell" instruction. *See United States v. Jewell*, 532 F.2d 697 (9th Cir. 1976). Appellant contends that the instruction should not have been given under the facts of this case.

■■ Appellant is correct in asserting that the *Jewell* instruction is appropriate only in those cases where the defendant claims a lack of knowledge and there are facts that point in the direction of deliberate ignorance. *See United States v. Murrieta-Bejarano*, 552 F.2d 1323, 1325 (9th Cir. 1977). A comparison of the facts in *Jewell* with the facts testified to at appellant's trial demonstrate that the giving of the instruction was based upon sufficient evidence to point to deliberate ignorance by the appellant of the true contents of the plastic container. Therefore, the giving of the instruction was proper.

AFFIRMED.