UNITED STATES of America,
Plaintiff-Appellee,

v.

Douglas Paul AMAN,
Defendant-Appellant.

C.A. No. 80–1045.

United States Court of Appeals,
Ninth Circuit.

Submitted July 9, 1980.

Decided Aug. 1, 1980.

Stephen J. Perelson, Serra, Perelson, Metcalf & Archuleta, San Francisco, Cal., for defendant-appellant.

Eric J. Swenson, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before MERRILL and KENNEDY, Circuit Judges, and SMITH,* District Judge.

MERRILL, Circuit Judge:

Appellant Douglas Aman was convicted of importation of a controlled substance and possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. §§ 952(a) and 841(a)(1). He appeals, challenging the admission at trial of approximately 42 grams of heroin which he had secreted in his rectal cavity. The presence of foreign objects in Aman's body cavity was first disclosed by an X-ray search; Aman contends that neither the X-ray search nor the strip search which preceded it was proper.

We disagree. The following facts justified both the strip search and the X-ray search. When Aman arrived at San Francisco International Airport from Bangkok, Thailand, Customs inspectors noted that he appeared disoriented, suggesting that he was under the influence of narcotics, and that his body movements seemed restricted, typical of those engaged in body cavity smuggling. The Customs Bureau computer contained entries which indicated that Aman had previously been involved in narcotics smuggling and was currently suspected of smuggling heroin from Thailand in his body cavity. A Customs search of appellant's luggage revealed two types of lubricant and six prophylactics, items typically used in body cavity smuggling, in addition to a quantity of marijuana.

In response to the inspectors' questions regarding his employment, Aman stated that he owned a construction business, but was unable to supply a business address, telephone number, or card; he then stated that he ran the business out of his parents' home. Aman stated, apparently to explain the prophylactics and lubricant in his lug-gage, that he had married while in Thailand. However, he had returned from Thailand alone. He attributed his stiff body movements to a recent auto accident (his face was scarred and his arm was in a sling).

Aman was then subjected to a strip search, including an external rectal examination, which revealed no indications of body cavity smuggling. He was next taken to the airport medical facility, where a physician conducted an X-ray examination which revealed the presence of foreign objects in his rectal cavity. He was then taken from the airport medical facility to the San Mateo County Hospital, where he was placed under observation. The following day, a telephonic warrant was secured from a magistrate. Aman initially refused to co-operate with the officers in efforts to secure the expulsion of the contraband. However, the day following the securing of the warrant he did agree, and the contraband was expelled and seized by the officers.

Aman first challenges the strip and X-ray searches as not supported by the required degree of suspicion or belief.

■ "Real suspicion" that the person to be searched is smuggling narcotics is required for a border strip search—a search involving visual inspection of body surfaces. See *United States v. Rodriguez*, 592 F.2d 553, 556 (9th Cir. 1979); *United States v. Holtz*, 479 F.2d 89, 91–92 (9th Cir. 1973). "Real suspicion" is "subjective suspicion supported by objective, articulable facts." *United States v. Rodriguez, supra*, 592 F.2d at 556 (citations omitted). The facts recited above clearly satisfied this standard.

■■ More, however, is required for a body cavity search at a border, a search which involves an intrusion "beyond the body's surface." *United States v. Holtz, supra*, 479 F.2d at 92. A "clear indication" or "plain suggestion" that the suspect is concealing contraband *in his body cavity* is

* The Honorable Russell E. Smith, Senior United States District Judge of the District of Mon-tana, sitting by designation.

required for such a search. *United States v. Cameron*, 538 F.2d 254, 257 (9th Cir. 1976); *Henderson v. United States*, 390 F.2d 805, 808 (9th Cir. 1967); *Rivas v. United States*, 368 F.2d 703 (9th Cir. 1966).[1]

■ It is not clear which of these two standards applies to an X-ray search. Although it does not squarely decide the question, *United States v. Caldera*, 421 F.2d 152 (9th Cir. 1970), suggests that "clear indication" of body cavity smuggling may be required for an X-ray search. We need not determine which standard should apply, since we conclude that both standards have been met: that appellant's disorientation, his restricted body movements, his uncertain responses to questions regarding his employment, the two computer entries regarding his drug smuggling activities,[2] and the items found in his luggage clearly indicated not only that he was engaged in smuggling but that smuggled narcotics might be concealed in his rectal cavity. *United States v. Cameron, supra*, 538 F.2d at 257; *Rivas v. United States, supra*, 368 F.2d at 710–11.[3]

■ Appellant next contends that the evidence should be suppressed because the telephonic warrant issued to permit the evidence to be retrieved from Aman's rectal cavity was vague and failed to comply with Rule 41 of the Federal Rules of Criminal Procedure.[4] However, there is no per se requirement of a warrant for body cavity searches at a border; a warrant is merely one factor to be considered in determining the reasonableness of the search. *United States v. Cameron, supra*, 538 F.2d at 258–59. Here, appellant does not contend that the procedures employed were unreasonable, nor could he.[5] Moreover, the warrant served the purpose identified in *Cameron* : it "secure[d] the cooperation of an otherwise reluctant suspect, thus rendering the search less painful." 538 F.2d at 259.

■ Finally, appellant contends that the evidence must be suppressed because obtained during an unnecessary delay in taking him before a magistrate, in violation of Rule 5(a) of the Federal Rules of Criminal Procedure. *See United States v. Mallory*, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479 (1957); *McNabb v. United States*, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943). Had one of the foreign objects in Aman's rectal cavity ruptured and released narcotics, he would have been in danger of serious injury or death.[6] It was essential that he be kept where medical personnel and facilities were immediately available in the event that this occurred. There was no unnecessary delay; Rule 5(a) was not violated.

Affirmed.

---

1. Although a "clear indication" or "plain suggestion" is more than "mere suspicion," probable cause is not required. *Rivas v. United States, supra*, 368 F.2d at 710.

2. While such computer entries, absent more, may not justify a strip search or body cavity search, they are a factor to be considered in assessing the justification for such searches. *See United States v. Cameron, supra*, 538 F.2d at 257; *United States v. Carter*, 480 F.2d 981, 983 (9th Cir. 1973).

3. In *Cameron*, the following factors were held to constitute clear indication of body cavity smuggling: the computer identification of appellant's vehicle; the various indications that he was under the influence of narcotics; the presence of lubricant in his rectal area; his previous smuggling charge; and his violation of his bond by traveling to Mexico. 538 F.2d at 257. The factors relied on in *Rivas* were appellant's nervousness and the indications that he was under the influence of narcotics. 368 F.2d at 710.

4. Appellant contends that the warrant was vague in that it did not specify the procedures to be employed in retrieving the evidence, but only that they be performed by authorized medical personnel. He also contends that Rule 41 was violated in that neither a duplicate original warrant nor an original warrant was prepared, nor did the officer requesting the warrant sign the federal magistrate's name to a duplicate original warrant.

5. In contrast to *Cameron*, where the appellant was made to submit to two forced rectal probes, two forced enemas, and an attempt to force a liquid laxative down his throat, Aman was not forced to submit to any medical procedures whatsoever.

6. The Customs inspectors had been informed of this risk by the physician who performed the X-ray examination at the airport medical facility.