UNITED STATES of America, Plaintiff–Appellee,

v.

Javier Alvaro MEDINA–VERDUGO, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Lanita Harriet WILLIAMS, Defendant–Appellant.

UNITED STATES of America, Plaintiff–Appellee,

v.

Charles Douglas ADAMS, Defendant–Appellant.

Nos. 79–1042, 79–1309 and 79–1314.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 4, 1979.

Decided Oct. 23, 1980.

Rehearing Denied Februrary 20, 1981.

Frank T. Vecchione, John H. Tannenberg, San Diego, Cal., argued for defendants–appellants; Jerrold Ladar, San Francisco, Cal., on brief.

John J. Robinson, Asst. U.S. Atty., San Diego, Cal., argued for plaintiff-appellee United States; Michael H. Walsh, U.S. Atty., John J. Robinson, Eve Bermingham, Asst. U.S. Attys., San Diego, Cal., on brief.

Before SNEED and KENNEDY, Circuit Judges, and EAST,* District Judge.

KENNEDY, Circuit Judge:

These consolidated appeals from convictions of persons who participated in a drug transaction raise questions concerning the search of a purse carried by one participant and a later search of luggage contained in an automobile. We affirm the conviction resulting from the search of the purse because the appellant has no standing to object to it. We are required by Supreme Court authority, however, to reverse the conviction resulting from the search of the luggage.

All appellants were convicted for both conspiracy and substantive offenses for possession and distribution of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846. In addition, appellant Medina–Verdugo was convicted for conspiracy and substantive offenses relating to illegal importation of her-

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

oin in violation of 21 U.S.C. §§ 952, 960, and 963.

## I

DEA agents in central California began surveillance of appellants Adams and Williams on receipt of a tip that they were about to engage in a narcotics transaction. A check showed that Williams had a previous narcotics arrest. Under surveillance, the suspects registered at a motel in El Centro, California, Adams using a fictitious name "L. Cain." After Williams had made several phone calls from a public pay phone and had received calls from a Spanish speaking person, Adams and Williams left for the border town of Calexico. The surveillance continued.

The agents lost sight of the vehicle when it took a circuitous route but found it within a few minutes. At that point it contained two additional occupants, a male and female, both of Mexican descent and later identified as appellant Medina–Verdugo and Maria Quintero–Vargas. The car stopped behind a gas station for approximately five minutes. Medina–Verdugo and Quintero then exited the car and proceeded on foot to the Mexican border. The agents requested assistance in stopping and questioning the Mexican couple at the border checkpoint and continued to trail Adams and Williams, who returned by car to El Centro.

When Medina–Verdugo and Quintero displayed their local border crossing cards, U.S. Customs inspectors confiscated the cards and led the pair to two rooms seventy–five feet away, where they were separated and subjected to a pat–down search. They also searched Quintero's purse. Inside the purse customs officials found $1,300 in cash, some airline tickets issued for trips between Los Angeles and San Francisco, and a card with the address, telephone number, and room number of Adams' and Williams' motel. The card also had the words "El Cain," approximating the alias being used by Adams.

DEA agents at the border station, when advised of the contents in the purse, read Medina–Verdugo his constitutional rights and interrogated him. He first denied, and then admitted, meeting persons in Calexico. He claimed ownership of half of the money in the purse and said the tickets were Quintero's. In a separate interrogation Quintero told agents that Medina–Verdugo owned all the money, the tickets, and the card. Contrary to Medina–Verdugo's statement, Quintero denied having entered a car with him to meet anyone.

The DEA agents at the border gave the above information to the agents trailing Adams and Williams. It was agreed that Medina–Verdugo and Quintero would be detained until the rented car was stopped.

In the interim, Adams and Williams had returned to the motel at El Centro, retrieved their luggage, and continued north. Their car was stopped near the town of Imperial, twenty–five minutes after the agents had received the information from the border station. Adams denied going to Calexico or meeting or visiting anyone in the area. When asked if there were any narcotics or weapons in the car, Adams replied there was a small amount of marijuana in his key holder.

The agents then made a nonconsensual search of the automobile, and found a garment bag and a gym bag in the trunk of the car. They opened the gym bag, searched it, and discovered two packages of heroin wrapped in women's underwear and placed inside a man's shoe. At this point, Adams and Williams were placed under arrest. The agents radioed the information to officers at the border, who then arrested Quintero and Medina–Verdugo.

Williams, Adams, Medina–Verdugo, and Quintero were indicted together, but Quintero's case was severed and eventually dismissed on the Government's motion. The district judge denied appellants' motion to suppress evidence and statements resulting from the allegedly unlawful searches and seizures. Subsequently, Williams and Medina were convicted after a jury trial, and Adams was convicted after a bench trial on stipulated facts.

On appeal Medina–Verdugo challenges the lawfulness of the search of Quintero's purse and contends that the statements he made at the border resulted from an illegal detention. Adams and Williams challenge their detention as an arrest without probable cause and allege further that the search of the gym bag which disclosed the narcotics was invalid because no search warrant had issued. In addition, Medina makes certain procedural claims.

## II

■ We first discuss the detention and search at the border challenged by Medina–Verdugó. We hold that he may not challenge the search of Quintero's purse because he lacked the requisite privacy interest. *See Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Appellant's ownership of the money, the tickets, and the card found in the purse is not determinative of the privacy inquiry. Rather, ownership is but one factor to consider in determining whether one has a reasonable expectation of privacy. *United States v. Salvucci*, ⸺ U.S. ⸺, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *Rawlings v. Kentucky*, ⸺ U.S. ⸺, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980). Here, as in *Rawlings*, Medina–Verdugo had no right to exclude others from opening Quintero's purse. Further, as in *Rawlings*, the "precipitous nature of the transaction" for sale of the drugs and transporting the money indicate that in permitting Quintero to hold proceeds of the sale Medina–Verdugo did not take reasonable precautions to maintain its privacy. To the contrary, it is likely that he feared detection at the border and gave the incriminatory evidence to Quintero precisely so that he could disclaim ownership, which he later did at trial. Consistently with *Rawlings* and *Salvucci*, we conclude that Medina–Verdugo lacked a legitimate expectation of privacy in his companion's purse and cannot challenge the lawfulness of the search.

The detention of Medina–Verdugo was justified by well–founded suspicion. It was brief and narrowly circumscribed considering the requirements for supervision and control at a border checkpoint, and in this light we think the officers complied with the standards of *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). Once the purse was opened, which was immediately after the stop, there was probable cause to arrest him. In view of our holding, it is unnecessary to inquire whether customs agents have authority to stop, detain, and search persons suspected of leaving the country with the fruits or evidence of a crime, although we think there is merit to the contention. *See United States v. Stanley*, 545 F.2d 661 (9th Cir. 1976).

## III

■ We examine next the automobile stop and search challenged by Adams and Williams. The search of the gym bag in the automobile they were driving is controlled by *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), and albeit without much discussion, it appears we have adopted the rule that *Sanders* is retroactive at least to searches which have occurred after *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977). *United States v. MacKay*, 606 F.2d 264 (9th Cir. 1979).

There is a factual distinction between the search in *Sanders* and the search in the case before us. In *Sanders* the officers had focused their attention specifically on the attache case, and the fact that it was contained in an automobile was only fortuitous and incidental. *See Arkansas v. Sanders*, 442 U.S. 753, 766, 99 S.Ct. 2586, 2594, 61 L.Ed.2d 235 (1979) (Burger, C. J., concurring in judgment). In the instant case, the officers stopped the car because they had probable cause to believe the suspects had concealed the contraband some place within it. The gym bag search was simply part of a larger search of the entire automobile. We think, however, that *United States v. MacKay*, 606 F.2d 264 (9th Cir. 1979) binds us to reject any interpretation of *Sanders* that makes the validity of an automobile luggage search depend upon whether the officers suspect that a particular piece of luggage contains contraband. In *MacKay* officers were informed that an ex–felon

possessed a gun somewhere in his automobile. The information is like the general information about the contraband the officers had in this case. Under the rationale in *Sanders*, we invalidated the search of luggage in *MacKay*, and *MacKay* requires us to invalidate the search that occurred here. We assume, moreover, because the Government has not argued to the contrary, that the gym bag searched here is the equivalent of a closed suitcase to which an expectation of privacy attaches. *Cf. United States v. Mackey*, 626 F.2d 684 (9th Cir. 1980) (warrantless search of paper bag found underneath car seat upheld because of insufficient privacy interest). It follows that the contraband seized from the gym bag must be suppressed and the convictions of Adams and Williams reversed.

### IV

Having disposed of the principal issues raised by the appellants, we turn to certain arguments made by Medina–Verdugo concerning the conduct of his trial. At trial, Medina–Verdugo testified on his own behalf, disclaiming knowledge of the narcotics transaction and ownership of the items found in the purse. At the conclusion of the prosecutor's cross–examination, the trial court asked him three questions and showed him his affidavit from a suppression hearing in which he claimed ownership of the purse's contents. Appellant claims he was denied a fair trial because this cross–examination by the court demonstrated bias and usurped the role of the prosecution. We reject the contention.

A trial judge may question witnesses to clarify and develop facts in a nonprejudicial manner, but must not adopt a partisan stance. *Rogers v. United States*, 609 F.2d 1315 (9th Cir. 1979); *United States v. Eldred*, 588 F.2d 746 (9th Cir. 1978). The trial judge here did not overstep. Three questions were asked, each was pertinent, and all were designed to clarify the facts. In addition, the court advised the jury that its questions were formulated to help the record, and were not indicative of judicial opinion. On these facts, the court did not demonstrate bias or usurp the role of the prosecutor.

The final claim is that Medina–Verdugo was denied effective assistance of counsel because his attorney permitted him to take the stand and deny ownership of the contents of the purse, even though Medina–Verdugo had signed a pretrial affidavit claiming an interest in the items. We find this contention unconvincing.

The sixth amendment requires that persons accused of crimes be afforded "reasonably competent and effective representation." *Cooper v. Fitzharris*, 586 F.2d 1325 (9th Cir. 1978) (en banc), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979). However, counsel need not be infallible. *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Cooper, supra*, 586 F.2d at 1330. In the instant case, counsel reasonably could have decided that the best defense tactic was for appellant to take the stand, deny ownership of the items, and attempt to explain the prior inconsistency.

For the foregoing reasons, we affirm the conviction of appellant Medina–Verdugo, but we reverse the convictions of appellants Adams and Williams.

SNEED, Circuit Judge, concurring:

I join in the opinion of Judge Kennedy. As that opinion makes clear, the result we reach is required by our reading of the applicable Supreme Court authorities.

No doubt law enforcement efforts would be less hampered were the probable cause sufficient to justify a seizure without a warrant of a closed receptacle, such as a suitcase, valise, attache case, or gym bag, also considered sufficient to support its search without a warrant on the spot when the probable cause to seize arises in connection with an investigatory stop of an automobile which itself was based either on probable cause or founded suspicion. This does not appear to be the law, however.

Under what we perceive to be the law, the officers, after stopping Adams and Williams and not observing any contraband in plain view, either should have let them go, arrested them and brought them back to either Imperial or El Centro and obtained a

warrant to search the car and any closed receptacles, or held them at the point at which they were stopped until a warrant to search was obtained pursuant to Rule 41(c)(2), F.R.Crim.P. The first course would avoid all constitutional problems; the same cannot be said for the second or third. Perhaps both would survive any constitutional attack, perhaps not. It remains to be seen.

In any event, the controlling Supreme Court authorities make clear that, when confronted by circumstances such as exist in this case, the actions of police who, following this decision, choose not to release those reasonably and strongly suspected of illegality, will impose a strain on the concepts of probable cause to arrest suspects and to seize their automobiles, together with their contents, as well as those enunciated in *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). It is my hope that the strain will accommodate a course of action other than releasing the suspects.