**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert Karl EK, Defendant-Appellant.**

**No. 80–1452.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 4, 1981.

Decided May 3, 1982.

As Amended Aug. 26, 1982.

James R. Dunn, Federal Public Defender, Los Angeles, Cal., argued, for defendant-appellant; Georgina Torres Rizk, Los Angeles, Cal., on brief.

Hector C. Perez, Asst. U. S. Atty., Los Angeles, Cal., argued, for plaintiff-appellee; Andrea Sheridan Ordin, U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Los Angeles, Cal., on brief.

Before FLETCHER and PREGERSON, Circuit Judges, and SCHNACKE, District Judge.*

FLETCHER, Circuit Judge:

Robert Karl Ek and Joseph Mark Couch were apprehended at Los Angeles International Airport when they entered the country with capsules of cocaine concealed in their stomachs. Both Ek and Couch were detained and subjected to X-ray examinations. Ek, the appellant in this case, confessed to smuggling cocaine after the X-ray examination revealed the presence of foreign objects in his intestinal tract. He was convicted of importation of a controlled substance and possession with intent to distribute. He argues on appeal that the detention and X-ray search violated his fourth amendment rights, and that his confession was not voluntary. We reject these contentions and affirm.

## I

### FACTS

Ek and Couch arrived at Los Angeles International Airport at 7:30 a. m. on March 5, 1980, aboard a flight from Lima, Peru. At customs, an inspector told them that they were suspected of smuggling narcotics and took them to an area in which searches and interrogations are conducted.

The authorities were acting upon a confidential informant's tip that during the week of March 4, 1980, Couch and a man named "Robert" would try to smuggle cocaine from Peru to the United States via Los Angeles International Airport. The informant described in detail how "Robert" and Couch would swallow up to 30 or more capsules, each filled with about one-half ounce of cocaine, and expel them when it was safe. The informant said further that "Billy" and "Dee Dee" had made a round-trip plane reservation for "Robert" at a

_____

* The Honorable Robert H. Schnacke, United States District Judge for the Northern District of California, sitting by designation.

Menlo Park, California, travel agency, and paid for the ticket in cash.

Ek's and Couch's bags were searched at the secondary inspection area. Nothing was found. The men were asked to submit voluntarily to X-ray examinations, but both refused.

The customs agents instructed Ek about his constitutional rights, and at about 9:00 a. m. took him to the Drug Enforcement Administration's airport office to await a court order authorizing an X-ray search. The move to the DEA office, according to one of the customs agents, was to free up the customs area to accommodate incoming flights. Once at the DEA office, a DEA agent questioned Ek about his personal history and his travel itinerary. A second search of Ek's baggage revealed that Ek and two others had purchased airline tickets from a travel agency (the record does not indicate whether the travel agency was identified) and had stayed in Peru for four and one-half days.

The order for the X-ray search was issued at about 4:00 p. m., and Ek and Couch were X-rayed at a local hospital at about 7:00 p. m. The X-rays showed objects concealed in the gastro-intestinal tracts of both men.

Ek was placed under arrest and again advised of his constitutional rights. He then admitted to swallowing balloons filled with cocaine.

At 8:30 p. m., the two men were taken to Los Angeles County Jail for booking. At 1:00 a. m., they were transferred to the jail medical facility at a nearby hospital. Ek made a full confession at 2:00 a. m. after again being advised of his rights. A written statement was prepared, and Ek signed the statement at 4:30 a. m. On the following day, Ek reviewed and signed a typed version of the same statement.

Ek raises the following issues on appeal:

(1) that his detention while awaiting the order was an arrest for which probable cause was required;

(2) that even if the detention was not an arrest, the delay made the detention unreasonable;

(3) that customs agents did not have the requisite level of suspicion of body cavity smuggling to warrant an X-ray search; and

(4) that his post-arrest statements were not voluntarily made.

II

DETENTION AS ARREST

Ek contends that his detention for ten to twelve hours prior to being placed under formal arrest was an "arrest" within the meaning of *Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), and that since the "arrest" was not supported by probable cause, all derivative evidence must be suppressed.

▮ Ek's detention was incident to a border search. The fourth amendment does not require a warrant or probable cause for customs searches at the border. *See United States v. Moore*, 638 F.2d 1171, 1173 (9th Cir. 1980). This circuit has held that the *Dunaway* analysis does not apply to reasonable detentions for the purpose of conducting a border search.[1] *United States v. Erwin*, 625 F.2d 838, 841 (9th Cir. 1980); *see also United States v. Espericueta-Reyes*, 631 F.2d 616, 621–22 (9th Cir. 1980) (holding, without mention of *Dunaway*, that detentions incident to border searches are permissible so long as they are reasonably related to the search). Neither a warrant nor probable cause is needed to detain persons for a search at the border, so long as the period of detention does not exceed what is reasonably necessary to conduct a valid search.[2]

1. We address only the fact of detention in this case, and express no views about whether *Dunaway* may have some application to statements that are elicited from a suspect during his detention. *See United States v. Espericueta-Reyes*, 631 F.2d 616, 622 (9th Cir. 1980).

2. *United States v. Perez-Esparza*, 609 F.2d 1284, 1286–87 (9th Cir. 1979), and *United States v. Medina-Verdugo*, 637 F.2d 649, 652 (9th Cir. 1980), are not to the contrary. The court in *Perez-Esparza* used a *Dunaway*-type analysis in the context of a search at the San

## III

## REASONABLENESS OF DETENTION

■ Ek argues that his ten-to-twelve-hour detention was longer than reasonably necessary to conduct the search. A detention at the border while an order is sought to conduct a body search is reasonable. *United States v. Erwin*, 625 F.2d 838, 841 (9th Cir. 1980); *see United States v. Cameron*, 538 F.2d 254, 258–59 & n.7 (9th Cir. 1976). Ek contends, however, that the Government intentionally delayed obtaining the order so as to pressure him into confessing or consenting to an X-ray search. The record does not support Ek's claim. The procedures involved in obtaining the order were time-consuming, and there is no evidence to suggest that the Government did not move as expeditiously as possible.[3]

## IV

## LEVEL OF SUSPICION

■ Although neither a warrant nor probable cause is needed for ordinary searches of persons and things crossing the border, this circuit has fashioned rules requiring cause for certain kinds of more intrusive border searches. As a search becomes more intrusive, it must be justified by a correspondingly higher level of suspicion of wrongdoing. *United States v. Aman*, 624 F.2d 911, 912–13 (9th Cir. 1980). Our court has also expressed a strong preference that search warrants be obtained by customs agents before body cavity searches are made. *United States v. Cameron*, 538 F.2d at 258–259.

■ To conduct a strip search, the authorities must have a "real suspicion" that the person is smuggling contraband. Real suspicion is "subjective suspicion supported by objective, articulable facts." *Aman*, 624 F.2d at 912 (quoting *United States v. Rodriguez*, 592 F.2d 553, 556 (9th Cir. 1979)). To conduct a body cavity search, the authorities must meet the stricter standard of having a "clear indication" or "plain suggestion" that the person is carrying contraband within his body. *Id.* at 912–13. This circuit has not yet decided which of these standards applies to an X-ray search. *Id.* at 913.

We hold that the stricter standard required for a body cavity search[4] also applies to an X-ray search. An X-ray search, although perhaps not so humiliating as a strip search, nevertheless is more intrusive since the search is potentially harmful to the health of the suspect. It goes beyond the passive inspection of body surfaces. We think that the use of such medical procedures should be restricted to situations where there is a clear indication that the suspect is concealing contraband within his body.

■ We find that the authorities in this case had a clear indication that Ek and Couch were involved in body cavity smuggling and acted properly in seeking a court order for X-ray examinations. The confidential informant on whose tip the authorities were acting had identified Ek (to the extent of his first name) and his companion by his full name, had specified their itinerary, and had given a detailed account of how the men would conceal the cocaine in their stomachs. The informant's tip was corroborated by the men's arrival on the same flight from Peru at the place and the approximate time predicted. In addition,

Clemente border checkpoint. This court has held that the San Clemente checkpoint is not the border or its functional equivalent and that searches conducted there are not controlled by principles applied to border searches. *United States v. Morgan*, 501 F.2d 1351 (9th Cir. 1974). The court in *Medina-Verdugo* apparently did not reach the question of whether *Dunaway* applies to border searches, because it found that the brief detention challenged there was not in any event an arrest under the *Dunaway* analysis.

3. The Ninth Circuit precedent is less than clear as to the standard of review that applies to

such determinations as reasonableness of detention or probable cause (or clear indication) adequate to support a warrant. We need not decide here which standard applies in that, whether we make a *de novo* review or apply the clearly erroneous standard, we reach the same result.

4. The concurring opinion suggests this holding to be *dictum*. On the contrary, an X-ray search was made in this case. We set forth the level of suspicion required so that we can measure the customs officer's actions against that standard.

Ek and Couch had refused offers of food or drink other than a sip of water.[5]

Ek contends, however, that the affidavit in support of the order did not sufficiently show that the informant's tip was reliable as required by *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). We do not agree that the *Aguilar-Spinelli* test is applicable here. Those cases dealt with the quantity and quality of evidence which must be presented to a magistrate in order to secure a warrant based on probable cause. We have already determined that neither a warrant nor probable cause was required for the X-ray search of Ek. Since the affidavit contained enough reliable information[6] from which the magistrate could have found a "clear indication" of body cavity smuggling, we need not decide whether there might be situations in which an informant's tip might be too non-specific and unreliable to support an X-ray search at the border. We uphold the trial court's denial of Ek's motion to suppress the evidence gained from the X-ray examination.

## V

## VOLUNTARINESS OF CONFESSION

[6] Finally, Ek contends that his post-arrest statements were not voluntary because at the time he made them he had been detained for a long period and had not eaten or slept. The district court found that although Ek's condition could have made him susceptible to coercion, he was not in any way coerced to confess. This finding must be sustained unless clearly erroneous. *United States v. Glover*, 596 F.2d 857, 865 (9th Cir.), *cert. denied*, 444 U.S. 857, 860, 100 S.Ct. 117, 124, 62 L.Ed.2d 76, 81 (1979). The court's finding is supported by the record. Accordingly, we will not disturb the trial court's refusal to suppress Ek's confession.

AFFIRMED.

SCHNACKE, District Judge, special concurrence.

While I agree that the judgment of the trial court clearly must be affirmed, I cannot agree to the inclusion of the *dicta* stating "We hold that the stricter standard required for a body cavity search also applies to an X-ray search". Such a holding is neither required by the opinion, nor supported by any evidence adduced in this case.

The majority agrees that persons may be detained at the border for as long as is reasonably necessary to conduct a valid search, that the detention here was reasonable, and that by any standard (whether "real suspicion" or "clear indication") it was plain that the defendant and his associate were involved in body cavity smuggling.

Although no warrant was required for an X-ray search, *United States v. Aman*, 624 F.2d 911 (9th Cir. 1980), the agents obtained from a magistrate, an order authorizing the X-ray procedures. I am aware of no authority which compels the obtaining of such an order, or which explains its nature or effect, or which sets the prerequisites for its issuance, but, as in *Aman, supra*, at p. 913, the fact that it was issued here adds to the reasonableness of the procedure.

I concede that I have no factual basis, in this case, to conclude, as I believe, that an X-ray examination is *less* intrusive than a strip search; similarly, the majority has no basis (and no need) to find to the contrary. The resolution of that issue should await an appropriate case.

---

5. The latter fact was included in the affidavit submitted to the magistrate. Ek argues, we think persuasively, that if the authorities had detained him until sufficient evidence was obtained to support the search order, the detention might implicate the *Dunaway* restrictions. We need not address this question here because customs officials had the requisite "clear indication" *before* the challenged detention.

6. The affidavit included a statement that the informant had provided reliable information on prior occasions.