UNITED STATES of America,
Plaintiff-Appellee,

v.

Orlando QUINTERO–CASTRO,
Defendant-Appellant.

No. 82–1516.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 9, 1983.

Decided April 27, 1983.

Eric L. Dobberteen, Los Angeles, Cal., for plaintiff-appellee.

Maria E. Stratton, Los Angeles, Cal., for defendant-appellant.

Before FLETCHER and NELSON, Circuit Judges, and SOLOMON,* District Judge.

PER CURIAM:

Orlando Quintero-Castro appeals his conviction for possession of cocaine with intent to distribute, 21 U.S.C. § 841 (1976 & Supp. IV 1980). The conviction was based on the recovery of a number of small balloons containing cocaine which had been concealed in Quintero-Castro's stomach and intestines. Quintero-Castro asserts that the district

* The Honorable Gus J. Solomon, United States District Judge for the District of Oregon, sitting by designation.

court erred in not suppressing this evidence discovered by an X-ray examination. The examination was ordered by a Magistrate solely on the basis of facts set forth in an affidavit of a customs agent. Quintero-Castro contends that affidavit did not contain a "clear indication" or "plain suggestion" that he was concealing contraband in a body cavity. *United States v. Ek,* 676 F.2d 379, 382 (9th Cir.1982).

Quintero-Castro and a companion, Jorge Aguilar, arrived at the Los Angeles International Airport from Bogota, Colombia. They had paid cash for their tickets and appeared nervous. A customs inspector became suspicious of them and referred them to the secondary inspection area where they were questioned and then strip searched. The visual inspection revealed nothing unusual.

Although Aguilar said that he did not know Quintero-Castro, their tickets were numbered consecutively, they sat together on the plane and they planned to stay at the same hotel. Both were carrying substantial amounts of cash. Quintero-Castro, when questioned, admitted that he had known Aguilar for five years. Quintero-Castro gave customs agents conflicting stories about his occupation. Both said that they were on pleasure trips and that their families were at home.

A customs inspector notified a special customs agent that he suspected Quintero-Castro and Aguilar of smuggling. The special agent then applied to a Magistrate for an order which would permit X-rays of both Quintero-Castro and Aguilar. His affidavit, which supported his application, contained the information he had obtained from the inspector. He also made general statements such as that Colombia is a common source of narcotics, and that some smugglers carry narcotics in their bodies. He also expressed his belief that both Quintero-Castro and Aguilar were smuggling narcotics inside their bodies.

Based solely on this information, the Magistrate issued the order. Quintero-Castro was taken to a hospital where he was X-rayed. The X-ray showed foreign objects in his stomach and intestines. Quintero-Castro was arrested and detained in the hospital where in the next few days he excreted 120 balloons holding 370 grams of cocaine.

A person entering the United States from an international flight is subject to routine searches without probable cause. *United States v. Couch,* 688 F.2d 599, 602 (9th Cir.1982). His luggage, purse and pockets may be searched without a showing of suspicion. *United States v. Palmer,* 575 F.2d 721, 723 (9th Cir.), *cert. denied,* 439 U.S. 875, 99 S.Ct. 212, 58 L.Ed.2d 189 (1978). A "minimal showing of suspicion" is required for a pat-down search. *United States v. Couch,* 688 F.2d at 604.

We have held that "as a search becomes more intrusive, it must be justified by a correspondingly higher level of suspicion of wrongdoing." *United States v. Ek,* 676 F.2d at 382. Therefore, a "real suspicion" that contraband is concealed on the body of the person to be searched is required for a strip search. *United States v. Guadalupe-Garza,* 421 F.2d 876, 879 (9th Cir.1970). X-ray and body cavity searches are the most intrusive. Such searches require a " 'clear indication' or 'plain suggestion' that the person is carrying contraband within his body." *United States v. Ek,* 676 F.2d at 382 (quoting *United States v. Aman,* 624 F.2d 911, 912–13 (9th Cir.1980)).

The facts as recited in the affidavit showed that Quintero-Castro appeared nervous; he had paid cash for his airline ticket; he said that he was on a short pleasure trip without his family; and that although he had relatives in the area, he planned to stay at a hotel. Aguilar and Quintero-Castro gave conflicting answers on whether they knew each other even though they were traveling together. They were coming from a drug source country. Quintero-Castro had a large amount of cash and told conflicting stories about his occupation. These are suspicious circumstances and indicate some wrongdoing, but the issue here is whether these circumstances ad-

equately focused suspicion on body cavity smuggling. *United States v. Ek,* 676 F.2d at 382.

The facts in the authorities filed by the government in which convictions were affirmed all contain a strong indication of body cavity smuggling. In *United States v. Aman, supra,* the suspect looked disoriented and his body movements appeared restricted. His luggage contained lubricants and prophylactics, items typically used in body cavity smuggling. His name appeared in the computer which contained names of persons who had been involved in smuggling narcotics. His luggage contained marijuana, and he gave uncertain answers about his occupation.

In *United States v. Shreve,* 697 F.2d 873 (9th Cir.1983), our most recent case, there were many suspicious circumstances which would indicate that the suspect was smuggling narcotics. He came from Peru, a known source of narcotics. He was traveling alone and did not know anyone in Peru. Although he was unemployed, he had paid cash for his ticket. He appeared nervous and was unusually talkative. In addition to these suspicious circumstances, there were clear indications of body cavity smuggling. His eyes were dilated and his speech was slurred; he walked in an unnaturally stiff and erect manner. He had consumed only beverages during his last three days in Peru, and his suitcase contained a bottle of oil that could be used to lubricate objects inserted into his body cavities.

We commend the customs authorities for having presented the facts to a Magistrate for permission to make an X-ray examination of Quintero-Castro. Nevertheless, we hold that the affidavit on which the order was based failed to set out facts on which the Magistrate could properly find a clear indication that Quintero-Castro was concealing contraband in his body cavity.

REVERSED.