**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Luis Alfonso MENDEZ–JIMENEZ,
Defendant-Appellant.**

**No. 82–1659.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 4, 1983.

Decided July 6, 1983.

As Amended Sept. 15, 1983.

---

Brian A. Sun, Asst. U.S. Atty., Los Angeles, Cal., for defendant-appellant.

Yolando Barrera Gomez, Deputy Federal Public Defender, Los Angeles, Cal., for plaintiff-appellee.

Before WRIGHT and SCHROEDER, Circuit Judges, and REED,* District Judge.

EDWARD C. REED, Jr., District Judge:

Defendant, Luis Alfonso Mendez-Jimenez, a Colombian national, arrived at Los Angeles International Airport aboard Avianca Flight 80 from Bogota, Colombia, on July 10, 1982. He presented himself to a customs inspector and then was referred to Inspector Talamantes at a secondary inspection station. Inspector Talamantes was particularly experienced and skilled in detecting body cavity and other internal smuggling. He had apprehended twenty-five individuals arriving on Flight 80 smuggling drugs in their body cavities or alimentary canals.

It was determined that the defendant was traveling alone. His airplane ticket

---

* Honorable Edward C. Reed, Jr., United States District Judge, District of Nevada, sitting by designation.

had been purchased for cash. He had only one piece of carry-on luggage. Questioning of Defendant revealed that he supposedly planned a ten-day vacation in the United States, had no relatives or friends here, and was confused as to where he was going to stay. The Inspector noted that the defendant spoke no English and was extremely nervous.

Defendant's wallet appeared to be stripped of the usual identification and cards. It contained only very limited identification and $990, all in cash, mostly in $100 bills.

A patdown search revealed that defendant was carrying an anti-diarrhea pill (Lomotil). His passport appeared to be forged and fraudulent, in that parts appeared to be inked by hand.

Defendant had not had anything to eat or drink since prior to his departure from Bogota. During the time he was detained he was offered food and drink, but stated he did not want any.

Colombia is well known as a source country for smuggling of drugs into the United States.

Defendant refused to consent to an x-ray examination, even after Inspector Talamantes indicated a court order would be obtained to require such an examination.

An affidavit containing these facts and circumstances was presented to a magistrate for the purpose of obtaining a court order authorizing an x-ray examination of Defendant. The magistrate signed the order and Defendant was x-rayed. The x-rays revealed foreign objects in his body. Defendant was detained until he passed 102 balloons containing 402 grams of cocaine.

Defendant's motion to suppress the evidence was denied and he was subsequently convicted by a jury of possession of cocaine with intent to distribute, in violation of Title 21 U.S.C. § 841(a)(1).

■ The question before this Court is whether the affidavit presented to the magistrate evidenced a clear indication of internal body smuggling based on the totality of the circumstances. *United States v. Rodri-guez,* 592 F.2d 553, 556 (9th Cir.1979). A court order compelling a person to submit to an x-ray examination is the equivalent of a search warrant for a body cavity search. *United States v. Erwin,* 625 F.2d 838, 840 (9th Cir.1980). "Clear indication" means more than real suspicion but less than probable cause. *United States v. Aman,* 624 F.2d 911, 913 n. 1 (9th Cir.1980). A clear indication or plain suggestion that the suspect is concealing contraband within his body is required before a search beyond the body's surface may be authorized. *Id.* at 912–913.

■ The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that a clear indication existed. *See Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Scrutiny as to the sufficiency of the affidavit does not take the form of a *de novo* review. *Id.* at 2331.

In reviewing the issue of probable cause (or clear indication) in a criminal case, the primary evidence is evaluated. *United States v. One Twin Engine Beech Airplane,* 533 F.2d 1106, 1108 (9th Cir.1976). Necessarily, this Court is limited to the information and circumstances available to the magistrate at the time she issued the order authorizing x-rays. *See United States v. Tate,* 694 F.2d 1217, 1221 (9th Cir.1982). A search is not made legal by what it turns up. *United States v. Guadalupe-Garza,* 421 F.2d 876, 880 (9th Cir.1970). The affidavit upon which the magistrate relied must be read in a common sense and realistic manner, with great deference being given to her determination that a clear indication (that the defendant was smuggling contraband within his body) existed. *See Illinois v. Gates, supra* at 2331; *United States v. Tate,* 694 F.2d 1217, 1221 (9th Cir.1982).

■ A reasonable man standard is not applied. On the contrary, the question is whether an experienced customs officer, such as Inspector Talamantes, after assessing the totality of the evidentiary factors and circumstances in the light of his own training and experience, would conclude that there was a clear indication that the

defendant was engaged in internal body smuggling. *See United States v. Cortez,* 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), cited with approval in the dissenting opinion of Rehnquist, J., in *Florida v. Royer,* —— U.S. ——, 103 S.Ct. 1319, at 1339 n. 6, 75 L.Ed.2d 229 (1983); *United States v. Brignoni-Ponce,* 422 U.S. 873, 885, 95 S.Ct. 2574, 2582, 45 L.Ed.2d 607 (1975); *United States v. Mastberg,* 503 F.2d 465, 469 (9th Cir.1974); *United States v. Ek,* 676 F.2d 379, 382 (9th Cir.1982). Accordingly, this Court should take into account what factors and circumstances experienced customs officers have considered to be indicative of such smuggling. In doing so, it should be noted that smuggling by ingestion into the alimentary canal does not leave the external signs that body cavity (e.g., rectum or vagina) smuggling does. *United States v. Couch,* 688 F.2d 599, 603 (9th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 128, 74 L.Ed.2d 110 (1982).

X-ray searches that have been upheld by this Circuit in a number of cases are enlightening:

1. *United States v. Shreve,* 697 F.2d 873 (9th Cir.1983)—The defendant walked in an unnaturally erect and stiff manner; he was an unemployed carpenter who had paid cash for his airline ticket; he had been traveling alone on a newly-issued passport; he had come from a known source country (Peru); he had stayed in Peru only a short while and knew no one there; he was unusually talkative, overly friendly, and nervous; his eyes were dilated and his speech slurred; he had consumed only beverages in the prior three days; and he possessed a bottle of oil that could be used to lubricate objects inserted into the body.

2. *United States v. Couch,* 688 F.2d 599 (9th Cir.1982)—The customs officer received a confidential informant's tip detailing a smuggling scheme (which was corroborated by the observations of customs officials); the defendant came from a source country (Peru); and he refused to eat during his detention.

3. *United States v. Ek,* 676 F.2d 379 (9th Cir.1982)—A confidential informant had identified the defendant and provided the details of a smuggling scheme; the defendant had come from a source country (Peru); and he refused food and drink during detention.

4. *United States v. Purvis,* 632 F.2d 94 (9th Cir.1980)—Defendant had arrived from a source country (Thailand); she had paid cash for her airline ticket; she had nothing to declare to customs; her movements were slow and careful; there were discrepancies between her story and that of her traveling companion; and items associated with smuggling were found in the companion's luggage.

5. *United States v. Aman,* 624 F.2d 911 (9th Cir.1980)—The defendant had arrived from a source country (Thailand); he appeared disoriented; his body movements were restricted; he previously had been involved in narcotics smuggling; lubricants and prophylactics were found in his luggage; marijuana also was discovered in his luggage; and he claimed to be self-employed, but had no business card.

6. *United States v. Erwin,* 625 F.2d 838 (9th Cir.1980)—The defendant had arrived from a source country (Thailand); her physical movements were restricted; and items in her baggage led customs agents·to believe she had something secreted in a body cavity.

The case of *United States v. Mastberg,* 503 F.2d 465 (9th Cir.1974), is particularly instructive. It points out that the validity of a search is not controlled by comparison with the facts and circumstances of other cases, although they are helpful. Rather, each case must be decided by application of the objective standard ("clear indication" in the instant action) to its own facts and circumstances. Also, the various factors vary in the directness of their relationships to suspicion of smuggling; that is, in their importance in the particular case. The totality of the factors, viewed in the light of an experienced customs inspector, determines the legality of the search.

■ In the case here under review, the Court lists the factors and circumstances

provided in the affidavit submitted to the magistrate, as follows:

Defendant's possession of an anti-diarrhea medication (Lomotil).

His non-consumption of food or beverages since before leaving Colombia, and his refusal to eat or drink while being detained in Los Angeles.

His arrival from a known source country (Colombia) on a flight which is known to be used by drug smugglers.

His claim to be on a short vacation in the United States, where he has neither relatives nor friends and is unable to understand or speak the language.

Confusion as to where he was going to stay in this country.

Defendant was traveling alone and carrying only one piece of carry-on luggage.

His possession of only limited identification.

All his funds were in the form of cash, and mostly in one hundred dollar bills.

He was very nervous.

He had purchased his plane ticket with cash.

His passport reflected tampering.

It is fair to say that after reviewing the affidavit on a basis of the totality of the circumstances, with deference to the issuance of the order by the magistrate permitting the x-ray, there was a clear indication of internal body smuggling by defendant Mendez-Jimenez.

A very recent decision of this court considered the sufficiency of an affidavit supporting an x-ray search and found that affidavit, in the circumstances of that case, to have been insufficient. *United States v. Quintero-Castro*, 705 F.2d 1099 (9th Cir. Apr. 27, 1983). In that case, however, there were fewer factors to support a finding of clear indication. There was no anti-diarrhea pill or any other substance which would be associated with internal smuggling; there was no showing of non-consumption of food or beverages; the suspects had relatives in the United States; and there was no evidence of passport tampering. That case is therefore clearly distinguishable from this one.

There is one other aspect which should be considered here—the Fourth Amendment bans only "unreasonable" searches and seizures, not every search or seizure. *United States v. Ramsey*, 431 U.S. 606, 617–618, 97 S.Ct. 1972, 1979, 52 L.Ed.2d 617 (1977). The procedures used in this case were neither needlessly intrusive nor arguably beyond the means necessary to obtain the evidence. *United States v. Shreve, supra*, at 874; *United States v. Couch*, 688 F.2d 599, 607 n. 13 (9th Cir.1982). They were reasonable in the circumstances.

The reasonableness test for a search contemplates consideration of the scope of the particular intrusion, the manner of its conduct, and the justification for initiating it. *Schmerber v. California*, 384 U.S. 757, 768, 86 S.Ct. 1826, 1834, 16 L.Ed.2d 908 (1966); *United States v. Guadalupe-Garza*, 421 F.2d 876, 878 (9th Cir.1970); *United States v. Cameron*, 538 F.2d 254, 258 (9th Cir.1976). Stated in other words, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's privacy and security interests against its promotion of legitimate governmental interests. *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). The prevention of narcotics smuggling entails a strong public interest. *United States v. Guadalupe-Garza*, 421 F.2d 876, 878–879 (9th Cir.1970). The circumstances of the search of Defendant meet the test of reasonableness of place, method and conduct. *See Huguez v. United States*, 406 F.2d 366, 381 (9th Cir.1968). The fact that a court order was obtained for the x-ray search supports the conclusion of reasonableness. *See United States v. Cameron*, 538 F.2d 254, 258 (9th Cir.1976); *United States v. Aman, supra*, at 913.

The judgment of the district court is AFFIRMED.