959 F.2d 242
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Porfirio DE LA MORA, Defendant-Appellant.
 No. 91-50391.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 4, 1992.
Decided March 31, 1992.
As Amended Oct. 1, 1992.
 
 1
 Before HUG and PREGERSON, Circuit Judges, and PECKHAM,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Porfirio de la Mora timely appeals his conviction from one count of possession with intent to distribute approximately 250 grams of heroin, a violation of 21 U.S.C. § 841(a)(1), and a second count of importing heroin, a violation of 21 U.S.C. § 952(a). De la Mora contends that the district court committed reversible error by denying his motion to suppress evidence obtained from a search of his shoes conducted upon his entry into this country at Los Angeles International Airport ("LAX"). We review de novo the legality of a search and seizure and review the district court's underlying findings of fact for clear error. United States v. Linn, 880 F.2d 209, 214 (9th Cir.1989).
 
 
 4
 De la Mora asks this court to adopt three arguments addressed and rejected by the district court. First, he argues that the inspection of defendant's shoes by United States Customs Inspectors went beyond a "routine" border inspection which need not be premised upon any degree of suspicion. Second, de la Mora contends that the Customs Inspectors lacked the "reasonable suspicion" required to justify a search which involves greater intrusion than does a "routine" border search. Finally, de la Mora argues that assuming that the search was premised on a sufficient degree of suspicion, the Customs Inspectors employed unreasonable search methods.[1]
 
 I.
 
 5
 The search in question occurred at LAX, the functional equivalent of a border, upon defendant's attempt to enter this country. Border searches "have been considered to be 'reasonable' by the single fact that the person or item in question had entered into our country from outside." United States v. Ramsey, 431 U.S. 606, 619 (1977). Thus, "[r]outine searches of the persons and effects of entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant." United States v. Montoya de Hernandez, 473 U.S. 531, 538 (1985) (citations omitted).
 
 
 6
 The threshold question for this court, then, centers on the character of the search of de la Mora's shoes: if routine, then the Customs Inspectors need not have possessed reasonable suspicion to ask him to remove his shoes for the purposes of a search and seizure. In this Circuit the test to determine whether a border search was routine turns on the degree of intrusion into a border entrant's legitimate expectations of privacy. United States v. Quintero-Castro, 705 F.2d 1099, 1100 (9th Cir.1983). More concretely, routine searches are defined as those which do not pose a "serious invasion of privacy" and which do not embarrass or offend the average person. United States v. Chase, 503 F.2d 571, 573-74 (9th Cir.1974), cert. denied, 420 U.S. 948 (1984).[2]
 
 
 7
 In applying this standard to the personal effects of a border entrant, the Ninth Circuit has held that a routine search of persons and effects includes inspection of pockets, purses, wallets, luggage and overcoats. Quintero-Castro, 705 F.2d at 1100. In fact, shoes in the Ninth Circuit do not generate a privacy interest of any greater magnitude than do the articles listed above. United States v. Chase, 503 F.2d 571, 573-74 (9th Cir.1974), cert. denied, 420 U.S. 948 (1984). In Chase, the Ninth Circuit addressed and rejected an argument almost identical to de la Mora's argument. Finding that removal of defendant's boots did not constitute a strip search which required "real suspicion," the court reasoned that "[w]e simply cannot say that the mere removal of a boot is the type of 'serious invasion of privacy' which the real suspicion standard, applicable to strip searches, was designed to limit." 503 F.2d at 573-74.[3]
 
 
 8
 In the instant case, de la Mora sought to cross our national borders and Customs Inspectors asked no more of him than "the mere removal of a boot." Further, the search was conducted in a private room separated from public scrutiny and did not involve any physical contact between the Customs Inspectors and de la Mora.[4] Thus, we hold that the search in question was routine and, therefore, constitutional.[5]
 
 II.
 
 9
 Finally, de la Mora claims that the Customs Inspectors employed unreasonable means to search his shoes. More specifically, de la Mora contends that it was unreasonable to submit his shoes to an X-ray device and to penetrate them with a knife because less intrusive, alternate means were available to the Inspectors. This argument is unpersuasive in light of the Supreme Court's holding that the availability of less intrusive means "does not, in itself, render the search unreasonable." Montoya de Hernandez, 473 U.S. 531, 542 (1985).[6] Furthermore, the Customs Inspector commenced his inspection by flexing the shoes and by weighing the shoes in his hands. These preliminary measures revealed unusual stiffness and heaviness which laid a foundation for the Inspector's subsequent and reasonable decision to employ the knife to discover the source of the stiffness and heaviness.
 
 
 10
 For these reasons, the district court did not err in deciding that the search of de la Mora's shoes was constitutional.
 
 
 11
 AFFIRMED.
 
 
 
 *
 The Honorable Robert F. Peckham, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Defendant challenges only the inspection of the shoes and not the prior actions of the United States Customs Inspectors. The search of the shoes occurred after Customs Inspectors had placed him in a private room for secondary inspection
 
 
 [2]
 Defendant mistakenly relies on United States v. Nates, 831 F.2d 860 (9th Cir.1987), cert. denied, 487 U.S. 1205 (1988). Unlike the case at bar, Nates involved application of 31 U.S.C. § 5317(b) which at that time expressly required reasonable cause. Similarly, defendant's invocation of Quintero-Castro mistakenly overlooks the fact that Quintero-Castro involved an X-ray search of defendant's body which constitutes a much greater intrusion than the removal of shoes. 705 F.2d at 1100
 
 
 [3]
 Similarly, the Second Circuit has concluded that the search of a border entrant's shoes is an "acceptable routine border inspection procedure" which "needed no justification beyond that provided by [defendant's] decision to cross our national boundary." See United States v. Nieves, 609 F.2d 642, 646 (2d Cir.1979), cert. denied, 444 U.S. 1085 (1979)
 
 
 [4]
 In light of the absence of physical contact, this search is not analogous to a pat-down search which might have required an intermediate level of suspicion described as "mere suspicion." United States v. Couch, 688 F.2d 599, 604 (9th Cir.1982) (minimal showing of suspicion), cert. denied, 103 S.Ct. 128 (1982)
 
 
 [5]
 Given this conclusion, it is unnecessary to reach appellant's second argument that the record does not support a finding that the search was premised upon "reasonable suspicion."
 
 
 [6]
 Our holding does not conflict with Klarfeld v. United States, 944 F.2d 583 (9th Cir. 1991). In Klarfeld, we reversed an order granting a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Klarfeld was requred to remove his shoes before entering a federal courthouse. Our holding was that Klarfeld may be able to prove that his particular search was unnecessarily intrusive and therefore would fail to meet the Fourth Amendment's standard of reasonableness. U.S. Marshals could have used a hand-held magnometer. Although the availability of less intrusive means is not dispositive, it is a factor that may be considered. Other factors, such as the qualitative differences in the locations in which De la Mora and Klarfeld were searched, must also be considered
 Customs agents searched De la Mora at the functional equivalent of an international border. In contrast, U.S. Marshals searched Klarfeld at the entrance to a federal courthouse. This distinction is important to the determination of the balance of the reasonableness under the meaning of the Fourth Amendment. See Montoya de Hernandez, 473 U.S. at 540 ("The Fourth Amendment balance between the interests of the Government and the privacy right of the individual is also struck much more favorably to the Government at the border."). Our holding in this border search case, which is in accord with our prior border search cases, does not conflict with the holding of Klarfeld, which reversed a Rule 12(b)(6) dismissal of a claim relating to a search at a courthouse.